MILLER *v.* ANN ARBOR RAILROAD CO.

1. MASTER AND SERVANT—NEGLIGENCE — DEFECTIVE APPLIANCES — EVIDENCE—INSTRUCTIONS—QUESTION FOR JURY.

> In an action by a section foreman against a railroad company under the Federal employers' liability act to recover damages for injuries sustained in a collision between a hand car operated by plaintiff and a like car operated by another foreman of defendant, by reason of the alleged defective facings on the brakes of the latter's car preventing his car being stopped properly, whether the accident happened wholly or partially because of the negligence of the plaintiff in stopping his own car too suddenly, *held,* to be a question for the jury.

2. SAME—EVIDENCE—INSTRUCTIONS.

> Where the evidence tended to show that it was the duty of the section foremen to renew the facings on the wheels of their hand cars when they should need it, a charge that there was no evidence of negligence of the operator of a colliding car and that if the jury found the facings on that car were not reasonably safe and efficient for the purpose for which the car was used they might find the defendant guilty, was erroneous, as defendant could not have been negligent unless such operator of that car was.

3. SAME—INSTRUCTIONS—ASSUMPTION OF RISK.

> The court should have instructed the jury on the question of assumption of risk that defendant was not bound to keep its car in such condition that an accident would never happen, or absolutely safe, but only in such condition that an accident would ordinarily not be apt to happen in the ordinary reasonable use of the car, in which case defendant would not be negligent if an accident did happen.

4. CORPORATIONS—NEGLIGENCE—LIABILITY.

> Corporations act through servants or agents, and if they are liable for negligence, they are so liable because of the negligent act or omission of some particular agent or servant.

5. MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.

> Evidence *held,* not to furnish proper basis for a finding

of negligence on the part of defendant or any of its servants operating a hand car colliding with another hand car at the time of the accident.[1]

Error to Gratiot; Searl, J. Submitted January 23, 1917. (Docket No. 99.) Decided May 31, 1917.

Case by William Miller against the Ann Arbor Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Gustavus Ohlinger* and *O. G. Tuttle* (*Alexander L. Smith*, of counsel), for appellant.

*Charles H. Goggin* and *John T. Mathews,* for appellee.

Plaintiff brought his action against defendant railroad company to recover damages for injuries alleged to have been received by him through the negligence of his employer. It is conceded that both plaintiff and defendant at the time of the alleged injury were engaged in interstate commerce, and plaintiff's action is therefore planted upon the so-called Federal employers' liability act (35 U. S. Stat. 65 [U. S. Comp. Stat. 1916, §§ 8657-8665]).

On September 14, 1915, plaintiff was and had been for many months section foreman, and had charge of a section of defendant's railroad known as section 27, or Alma section. Adjoining the section under control of the plaintiff was section 28, or Ithaca section, which was under the control of one Whitmore as section foreman. In the conduct of the work upon his section, plaintiff was supplied with and used a hand car. This car was of the ordinary type, and was propelled by hand power. When being propelled, men stood upon the platform of said car, working two handles up and

---

[1]On master's liability for co-servant's negligence in respect to defective handcars, see note in 54 L. R. A. 172.

down, rods connected the handles with gearing beneath the platform, which caused the wheels to revolve. When pushed down the handles came within about 18 inches of the floor of the car, and when elevated were about 4½ feet above the floor. The braking apparatus is described as follows:

"A brake, that is a piece of wood about 8 inches long and 2 inches square at the top and tapers off almost to a point at the bottom end. It is curved the shape of the circumference of a wheel so as to cleave to the wheel, so as to have more friction surface. These brake shoes are fastened to two irons that run to a common point and through by a hole at the top end of each. Through the hole in these two pieces of irons runs a shaft or gudgeon on which the irons are keyed. Vertically from this gudgeon an iron extends up from a hole from the floor of the car, and on the top of the iron is a pedal upon which the operator places his foot to apply the brake. The shoes are faced with a piece of rubber generally."

Whitmore, on section 28, operated a hand car identical in construction as to size and braking facilities with that used by plaintiff. It differed from the car used by plaintiff in that it was supplied with a gasoline engine weighing about 250 pounds, which furnished the motive power. It was customary for the section gangs on sections 27 and 28 to work together when the business of the defendant company required. Upon such occasions it was usual, when the two gangs came together, for Whitmore to place his car behind the car used by plaintiff and to propel both to the point where the work was to be done. While this operation was not of frequent occurrence, it had happened several times during the period that plaintiff had been foreman of section 27. Prior to the day upon which plaintiff received his injury a culvert had been put in on section 27. While this culvert was being constructed the track had been temporarily carried

by two heavy timbers. The timbers were 30 feet long, 18 inches wide, and 10 inches thick. Plaintiff received orders to move these timbers from the culvert to Goldbaum's Crossing, and Whitmore with his gang was ordered to assist in doing this work. On the day in question the two gangs met at or near the point where their sections joined, and Whitmore, as was customary, proceeded to push plaintiff's car and crew in a northerly direction to the point where the timbers were to be loaded. It appears from the record that at a point about 10 rods south of the culvert there was a "take-off," or place where a hand car could be removed from the track to the side of the track and that north of the culvert, at about an equal distance, there was another take-off. It further appears that there was a down grade toward the north for some little distance south of the culvert. On the first trip, arriving in the vicinity of the southerly take-off, plaintiff motioned Whitmore to release his car, which Whitmore did by shutting off the power of his gasoline engine. Plaintiff's car thereupon "floated" ahead until in the vicinity of the northerly take-off, where it was stopped by plaintiff through the application of the brake, and was lifted off. Whitmore's car was then pushed past the take-off, and plaintiff's car was returned to the track. In that position they returned to the culvert, where one of the timbers was loaded, one end upon plaintiff's car and the other end upon Whitmore's car. Both cars were then propelled by the engine on Whitmore's car to Goldbaum's Crossing, where the stick was unloaded, the positions of the cars were again reversed, and the two crews started back to the culvert to get the second stick. Approaching the southerly take-off, plaintiff again signaled to Whitmore, who threw off his power, and plaintiff upon his car "floated" ahead as before. Plaintiff applied the brake to his car with the intention of stopping at the

north take-off, as he did upon the first occasion, and when some little distance therefrom, and while traveling at about three or four miles an hour, a rear-end collision occurred between Whitmore's car and his own. Whitmore's car at the moment of impact was traveling at perhaps double the speed at which plaintiff's car was moving. As a result of the collision, plaintiff, who was standing between the handle bars of his own car, was thrown with some violence against the rear handle bar, breaking it off, and in some manner, not explained by plaintiff, he claims to have received a blow upon the back of his head. No mention of any injury was made by plaintiff at the time of the accident. He removed his car at the take-off as before, Whitmore's car was rolled past, and in the changed positions the cars were returned to the culvert, where the second timber was loaded and transported to Goldbaum's.

With reference to the rubber face of the brakes upon Whitmore's car one Argersinger, a member of Whitmore's crew, testified:

"*Q.* What was the condition of the facing on it?

"*A.* It was worn some.

"*Q.* Describe the condition of the facing on this brake on the day of the accident.

"*A.* The facing of the brake—there had been a piece of rubber belt; I put it on there myself when this rubber belt had got worn until it was smooth and nearly worn through at the bottom, clear down to the bottom of those two brake shoes, and it was very defective; it would not hold when you would get on to it.

"*Q.* It didn't hold when you stepped on to it?

"*A.* Yes, sir. It was smooth and pretty well worn. It would not hold much, like myself and Mr. Whitmore stepped on the brake, no heavier than we were, both weighed about 140 pounds, we did not have very much effect on it, either him or I, but Rathbun or Nafe could jump on to that with their giant heft, and it would make quite an impression, as smooth as it was."

This witness further testified that on an occasion a couple of months before the accident, when they were operating this identical hand car upon which, himself and four others, including Joseph C. Fink, roadmaster of the defendant company, were riding, at about 25 miles per hour on a down grade, substantially the same as that at the place of the accident, it became necessary to stop the car, and that on that occasion it went 100 feet. He further testified:

"*A.* I took the brakes off the Whitmore car three or four times. When the car would generally get so that the brakes would not work good, I would put a new piece of belting on them."

With reference to the brakes upon the plaintiff's car, plaintiff gave the following testimony:

"*Q.* Did you ever put any facing on the brake shoes of your hand car?
"*A.* Yes, sir.    *    *    *
"*Q.* About how often did you put on that leather on the brake shoes of this hand car you were using that day?
"*A.* I don't know. When it wore out I would put on some new.
"*Q.* Whenever the facing on that brake shoe was worn out you would put on another piece of leather?
"*A.* Yes, sir.
"*Q.* You did that yourself?
"*A.* Yes, sir.
"*Q.* You had done it on this car you were using that day?    *    *    *
"*A.* I think I did put some on that car.
"*Q.* Can you tell the jury about how often you had made that kind of a repair on that car?
"*A.* I don't know as I had only made it about once or twice.
"*Q.* Had you ever made that sort of a repair on any other car?
"*A.* No, sir.
"*Q.* This was the only car you ever used?
"*A.* Yes, sir.
"*Q.* The only hand car you ever had on your section?

"*A.* Yes, sir. * * *

"*Q.* During the five or six years you worked on your section, you only repaired the brakes once?

"*A.* I was not foreman all the time there.

"*Q.* Did you ever see any one else repair the brakes?

"*A.* I don't know.

"*Q.* How long were you foreman?

"*A.* About 17 months.

"*Q.* During the 17 months you were foreman, you repaired the brakes only—

"*A.* I think once or twice.

"*Q.* You had never seen anybody else do it, you think?

"*A.* Not as I know of."

The sole question submitted to the jury touching defendant's negligence referred to the condition of the brakes on Whitmore's car. Upon this question the court charged the jury as follows:

"You have heard all the evidence that has been offered here in regard to this brake on the car, and you take that up and weigh it and determine whether or not the plaintiff has shown by a preponderance of the evidence that the brake on that car on the day in question was defective or deficient so that the car could not ordinarily be stopped within a reasonable distance after the brake was applied by the men in the operation of it. In that connection I charge you, gentlemen of the jury, as a matter of law that it was the duty of the Ann Arbor Railroad Company to furnish a hand car with brakes sufficiently efficient to be reasonably safe in its operation by the man that had to work upon it and around it and in connection with it. This duty would not require the railroad company to furnish a car that was absolutely safe; they would not be bound to furnish and keep on this car brakes in such condition that an accident would be sure never to happen; they are not required to do that, but they are required to furnish this car and keep it in condition, and the brakes, so that an accident would ordinarily not be apt to happen in the ordinary reasonable use of the car, and if they did that, notwithstanding the fact that an accident did happen, then they would not be negligent. But if the railroad company did not

do that, and these brakes were not reasonably safe and efficient for the purpose for which the car was used, and you find that is shown by a preponderance of the evidence, then you would have a right to determine that that was negligence upon the part of the railroad company, and then you would pass to the other questions which I shall submit to you."

At the conclusion of the testimony and before the charge was given the court announced to counsel that the only question touching defendant's negligence to be submitted to the jury would be whether the brakes on the Whitmore car were in proper repair or not, whereupon counsel for defendant inquired:

"Will your honor instruct them there is no evidence of negligence on the part of Whitmore?

"*The Court:* Yes; I will instruct them that too."

Counsel for defendant moved for a directed verdict upon three grounds:

(1) That plaintiff had failed to show any negligence on the part of the defendant.

(2) That the plaintiff had assumed the risk.

(3) That the accident was due to the fact that plaintiff had stopped his own car too quickly, thereby himself being the cause of the collision.

This motion was denied, and the case went to the jury under the instructions above set forth, and the jury returned a verdict in favor of the plaintiff.

BROOKE, J. (*after stating the facts*). Whether the accident happened wholly or partially because of the negligence of the plaintiff in stopping his own car too suddenly raised a question of fact, which was submitted to the jury by the court under proper instructions. We are of opinion too that the proper rule was enunciated by the court with reference to plaintiff's assumption of risk. The important question for determination upon this record is whether the court was right in submitting to the jury the question of defend-

ant's negligence based upon evidence of the condition of the lining of the brake shoes at the time of the accident. If, as found by the jury, the defendant was negligent in that it had not exercised reasonable care to see that the lining of the brake shoes on Whitmore's car was seasonably renewed, it would seem that that negligence must have grown out of the fact that Whitmore himself failed to do his duty in the premises. The testimony of Argersinger to the effect that he had on several occasions renewed the lining of the brake shoes on the Whitmore car as they became worn. and the testimony of the plaintiff that, during the 17 months he had been foreman of the gang on section 27, he had renewed the lining on the brake shoes of his car once or perhaps twice makes it clear, we think, that it was in contemplation of the parties, the plaintiff as well as the defendant, that this small and insignificant repair should be made by the section boss or one of his men under his direction. Inasmuch, therefore, as the defendant could not have been negligent unless Whitmore, a fellow employee of the plaintiff, was negligent, the court clearly was in error in instructing the jury that there was no negligence on the part of Whitmore and yet that if they found the brake shoes to have been "not reasonably safe and efficient for the purpose for which the car was used," they might find the defendant negligent. Section 2 of the so-called Federal employers' liability act provides:

"That every common carrier  *   *   *   shall be liable in damages to any person suffering injury while he is employed by such carrier  *   *   *   for such injury  *   *   *   resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."  *   *   *

In the Second Employers' Liability Cases, 223 U. S. 1 (32 Sup. Ct. 169, 38 L. R. A. [N. S.] 44), it is held:

(*a*) That the Federal act supersedes all State regulation upon the subject.

(*b*) That in removing the defenses of the assumption of risk, the fellow-servant doctrine, and modifying that of contributory negligence, the congress acted within proper constitutional limitations.

See, also, *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492 (34 Sup. Ct. 635, L. R. A. 1915C, 1 Am. & Eng. Ann. Cas. 1915B, 475). Under these authorities it is therefore clear that if the accident to plaintiff occurred by reason of the fact that the lining of the brake shoe on Whitmore's car had become unduly worn (and that was the theory upon which the case went to the jury), the defendant might be held liable for negligence, that negligence consisting in the failure of Whitmore, the plaintiff's fellow servant, to seasonably renew, or cause to be renewed, the lining. The jury should have been instructed that they could find the defendant guilty of negligence only if they found that Whitmore was guilty of negligence because of his failure to act with reasonable prudence in the premises. Corporations act through agents or servants, and if they are liable for negligence, they are so liable because of the negligent act or omission of some particular agent or servant.

It is pointed out by counsel for defendant that, though plaintiff showed that Whitmore's car, when running at a certain rate of speed, could not be stopped by application of the brake within a certain number of feet, there is no evidence in the record tending to show within what distance Whitmore's car could be stopped with brakes equipped with proper linings, and therefore that the jury had no legitimate basis for a finding of negligence on the part of the defendant or any of its servants. We are of opinion that this is a just criticism of the proofs as they exist in this record.

The record fails to disclose whether the hand cars

in question were originally furnished to the several section foremen equipped with brake shoe linings, or without such equipment. If they were originally furnished without such equipment and the linings were added by the section men themselves as occasion required from time to time, in order to facilitate the handling of the cars, a different question would be presented.

Judgment will be reversed, and a new trial ordered.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.