HUGHITT v. SAYEN.

1. EVIDENCE—PRINCIPAL AND AGENT—HEARSAY.
In an action on two promissory notes, where defendant claimed a set-off by reason of certain railway ties furnished plaintiffs, for which he claimed they had failed to give him credit, testimony by defendant as to what a man, who he claimed was sent by plaintiffs to inspect and load the ties, told him as to the number of ties left on the ground, was hearsay and incompetent.

2. SAME.
The admissions of an agent are only evidence against the principal when they constitute part of the *res gestæ*—when they accompany the transaction in which the agent acted, and what he states at a subsequent time is inadmissible.

3. TRIAL—INSTRUCTIONS.
An instruction by the court, based on a conversation between defendant and one of the plaintiffs, allowing the jury to find a sale of the ties to plaintiffs at said time, although plaintiffs already claimed to own them under a contract of sale in writing, and said written contract was relied on by defendant in his special notice, *held*, reversible error.

4. SAME—NEW TRIAL—EVIDENCE—WEIGHT OF EVIDENCE.
Where the verdict of no cause of action was more favorable to defendant than he was entitled to under his own testimony, plaintiffs' motion for a new trial should have been granted.

Error to Delta; Collingwood (Charles B.), J., presiding. Submitted January 20, 1922. (Docket No. 117.) Decided June 5, 1922.

Assumpsit by Orrin N. Hughitt and others, copartners as A. J. Hughitt & Sons, against Joseph E.

Sayen on certain promissory notes.   Judgment for defendant.   Plaintiffs bring error.   Reversed.

*Lewis & Pierson* (*Naegely & Pierson*, of counsel), for appellants.

*N. C. Spencer*, for appellee.

STEERE, J.   In the summer of 1914 plaintiffs, who were operators and dealers in forest products, had business relations with defendant, who was engaged in getting out and selling ties, in connection with which two notes were given by him to them, one for the sum of $1,200 dated July 2, 1914, due in one year after date with interest at 7 per cent. and the other for the sum of $1,000 dated September 1, 1914, due six months after date with interest at 7 per cent., and the following contract was entered into between the parties:

"Memorandum of agreement, made and entered into this 24th day of July, 1914, by and between Joseph E. Sayen, of Rock, Michigan, party of the first part, and A. J. Hughitt & Sons, parties of the second part, witnesseth:

"That for the sum of one dollar in hand paid and other valuable considerations, the receipt of which is acknowledged, the said first party agrees to sell and deliver to the said second parties, or their assigns, and the second parties agree to buy and receive, all of the pulpwood, railway ties, posts and poles that shall be bought or gotten out by the said first party during the season of 1914 and 1915, all to be f. o. b. cars unless otherwise agreed upon.

"Prices for the above named forest products shall be mutually agreed upon, on or before January 1, 1915.

                                    "JOS. E. SAYEN.
"Witnesses:                         "A. J. HUGHITT & SONS.
  "F. J. HAMMACHER.
  "CAROLINE HAMMACHER.
    "Made in Duplicate."

On September 15, 1919, plaintiffs brought an action in the circuit court for the county of Delta to recover the amount due upon these two promissory notes with interest and also upon an open account in favor of the Escanaba Hardware Company amounting to $213.15 which had been assigned to plaintiffs, less a credit given upon said notes as of date December 1, 1917, for $677.48.   Defendant pleaded the general issue, with special notice that pursuant to the contract quoted he had delivered to plaintiffs at Hill's Spur and Duga's Spur, Beaver branch of the Chicago & Northwestern Railway, 10,000 ties during the winter of 1914-1915, "delivery being made and accepted by plaintiffs in the summer of 1917;" that no price for the same was agreed upon between the parties and at the time plaintiffs accepted them they were worth 60 cents each; "that the plaintiffs have not accounted to the defendant for the said ties and that the defendant will set-off the amount due him for said ties against the plaintiffs' demand and asked that the balance be certified in his favor."   Upon the trial the notes were offered and received in evidence without objection, and the open account was conceded to be correct, the total sum so shown due plaintiffs amounting to the sum of $2,415.39.   The only dispute as to the correctness of this demand is defendant's claim of set-off for ties delivered to plaintiffs in the summer of 1917 and not paid for by them.   The trial court submitted the case to the jury, resulting in a verdict with judgment thereupon in favor of defendant of no cause of action.

During the progress of the trial various objections were made by plaintiffs' counsel to admission of claimed hearsay evidence.   At conclusion of the testimony they moved to strike out the same and for a directed verdict, which was denied.   Thereafter plaintiffs moved for a new trial on various grounds, which

was also denied. Refusal to strike out certain testimony claimed to be hearsay, to direct a verdict for plaintiffs, erroneous instructions to the jury and refusal to grant a new trial on the grounds stated in the motion therefor, are assigned and argued as errors.

Defendant's claim of set-off is for ties gotten out and piled at Hill's spur and Duga's spur on the Beaver branch of the Chicago & Northwestern Railway, by jobbers working for him during the winter of 1914 and 1915, pursuant to and following the contract made in July, 1914. These he claimed amounted to 7,732 ties at the two places, 6,232 being at Hill's spur and 1,500 at Duga's. With the exception of 500 "loaded out" at Duga's in 1915 he claimed they remained at the two spurs until the summer of 1917 when they were delivered to or accepted by plaintiffs, at which time cedar ties were worth 48 cents each and the tamarack ties, amounting to about 1,000, were worth 35½ cents.

Plaintiffs admit receiving and shipping 2,635 ties from those points in 1917, for which they claim the price was agreed upon and that amount constituted all the ties he furnished them from there; that when taken they paid or credited him in full for the same at 44 cents for cedar ties and 34 for tamarack. Except as to an agreed price this does not appear to be denied and, although at times denying, defendant himself during his cross-examination admitted an agreed price as follows:

"*Q.* Isn't it true that Mr. Bert. Hughitt and yourself got together and agreed upon prices?
"*A.* Yes, I think we did.
"*Q.* Do you remember what the verbal agreement was and how much?
"*A.* No, I don't remember what the prices were."

Defendant's counsel said in his opening:

"Hughitt & Sons went up there and loaded a quanti-

ty of these ties; loaded out the amount they have given credit for; and there being various other dealings between them, and it seems according to Hughitt & Sons everything was balanced except these notes.   So they loaded out a portion of the other ties, and then quit for a while.   They did not load out quite half; considerably less than half; and when they went up again after the ties the ties had disappeared.   It appears that somebody had stolen them.   Thereupon Hughitt & Sons refused to give Mr. Sayen any further credit for these ties, and insisted that it was his own loss."

We do not find it claimed anywhere in the record that plaintiffs themselves "had stolen" or taken without accounting and giving credit for the 5,097 ties which added to the 2,635 they did take and account for make the total of 7,732 ties defendant claims were gotten out at the two spurs in the winter of 1914-1915.

Plaintiffs contend they took all the ties there were at those spurs and defendant produced no competent evidence there were more.

The testimony to establish his claimed delivery of the 5,097 ties which had disappeared is given by defendant himself, who stated in substance that he told Mr. Hughitt in the fall of 1916 he had a chance to dispose of the ties at those sidings to Tom Connors of Negaunee and he thought "we had better get rid of them as soon as we could and get them out of there," and Mr. Hughitt said, "No, to leave them alone, that they will ship them themselves;" that they did load out 2,635 ties the next summer (1917) and the first defendant knew of it he met in Escanaba the man who inspected the ties loaded out, and was told by him they had been loading the ties and there were more left than they had loaded.   Further interrogated, he stated the man who so told him was Mr. Bennett, inspector for the Chicago & Northwestern Railway Company which bought the ties loaded out from plain-

tiffs, and that Hughitt said to him that he sent Bennett up there to load the ties. Plaintiffs' counsel then moved the court to strike out defendant's testimony as to what Bennett told him for the reason it was incompetent because hearsay, Bennett was not shown to have represented plaintiffs and in any event the statement was made after the ties were loaded and the claimed agency ended, and admissions by an agent after termination of his agency are not competent evidence to bind his former principal. This motion was denied.

Defendant testified that he had not been back there since the spring of 1916 until the summer of 1917 after the ties were gone, and his testimony as to what Bennett told him is the only distinct evidence of more ties there in the summer of 1917 than were loaded out. Aside from Hughitt's denial that Bennett was their agent for loading the ties or that he had ever told defendant he sent him up there for that purpose, such special agency would scarcely authorize the agent to bind his principal by such statements or admissions, and clearly not when made after his agency ended as shown here. To bind the principal admissions must accompany the transaction in which the agent acted. If made before the agent was employed by the party against whom they are sought to be used or after such employment terminated, they cannot be received in evidence. 22 C. J. p. 380. That rule is of long standing in this jurisdiction. *Benedict* v. *Denton*, Walk. Ch. 336; *Horner* v. *Fellows*, 1 Doug. 51; *Converse* v. *Blumrich*, 14 Mich. 109, 122; *North* v. *Metz*, 57 Mich. 612; *Maxson* v. *Railroad Co.*, 117 Mich. 218. In *Converse* v. *Blumrich, supra*, it is said:

"But the admissions of an agent are only evidence against the principal when they constitute a part of the *res gestæ*. They must accompany the transaction in which the agent acted; what he states at a subsequent time is inadmissible." Citing authorities.

In charging the jury the court referred to defendant's testimony that he proposed to Hughitt in the fall of 1916 that they sell the ties and get them out of there, which the latter refused to consent to, stating they would "ship them themselves," and said:

"It is his (defendant's) claim that Hughitt & Sons, through their authorized agent, or representative, told him not to sell them, claiming that the ties belonged to them and they would sell them and credit the amount to Mr. Sayen. While these exact words were not used, it is claimed by Joseph Sayen that it amounted to such a contract.

"Now it becomes your duty to decide from the evidence in this case whether such a sale was made at that time. This matter is disputed by Mr. Hughitt and it becomes your duty to find out whether that sale was made at that time."

This disregards defendant's claim as put in issue by his special notice, which was whether the ties contracted for under the written agreement of July 24, 1914, were delivered by him and accepted by plaintiffs in the summer of 1917. By that contract he had agreed to sell and deliver those ties to plaintiffs. They had made advances to him on the contract and were entitled to them. No time of delivery was specified in the contract. He made no tender or demand for immediate performance on their part but only told of a party who might buy them and, if his statement is accepted, that "we had better get rid of them as soon as we could and get them out of there," with which Hughitt did not agree, and later, pursuant to the original agreement as claimed in his special notice, defendant delivered those ties "gotten out and purchased by him in the winter of 1914 and 1915, such delivery being made and accepted by the plaintiffs in the summer of 1917." That conversation was in its final import but a re-assertion of the original agreement by plaintiffs acquiesced in by defendant, and certainly

was not proof of delivery and acceptance under it in 1917 as he alleges and makes claim for in his special notice.

Defendant's own testimony is at times interspersed with hearsay and self-contradictions, and unsupported in various particulars where, if as he claims, direct and convincing evidence by others would seem obtainable. In his claim for ties delivered in the summer of 1917 he includes 1,000 ties at Duga's spur, and also says there were no ties at that spur in the fall of 1916. The only man who got out ties at that spur in the winter of 1914-1915 testified that he got out 1,200 ties that winter and loaded them out for defendant in 1915, 700 in the spring and the balance in the fall, which defendant directed sent to Cummins Brothers, and that no ties went from that spur during 1917.

But accepting all defendant's evidence, hearsay and otherwise, with plaintiffs' ignored, and assuming he should be allowed for the number and kind of ties he testifies to, as of November, 1916, when Hughitt refused to let him sell them to Connors, we are unable by any figures he presents to compute a set-off which entirely extinguishes plaintiffs' undisputed claim. His own testimony eliminates Duga's spur, but if included he testified the ties there were all tamarack and would run 15 per cent. culls. He also stated those at Hill's spur were about 15 per cent. cedar and the balance tamarack, and would run about 10 per cent. culls. Deducting for the culls he admits and cost of loading, his credit at the market price he claimed would yet leave a balance in plaintiffs' favor.

Eliminating defendant's hearsay and wholly incompetent evidence and taking into reasonable consideration the evidence produced by plaintiffs, we are impelled to the conclusion that the set-off awarded by the

jury is unreasonable, against the clear weight of evidence and excessive.

For the errors above noted the judgment is reversed, with costs to plaintiffs and a new trial granted.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.

The late Justice STONE took no part in this decision.