GAREY v. KELVINATOR CORP.

1. CORPORATIONS—CONSOLIDATION—CREDITORS—CONTRACTS.
    Where a corporation purchased the assets of another corporation
    and expressly agreed to pay its debts, the creditors of the lat-
    ter may sue such purchasing corporation on the contract as a
    contract for their benefit.

2. SAME—CONTRACTS—CREDITORS—ASSUMPTION OF LIABILITIES.
    Plaintiff who claims to have rendered legal services to corpora-
    tion whose property, assets and business were largely acquired
    by defendant corporation under a contract under which it also
    assumed assignor's obligations held, entitled to sue defendant
    in an action at law under such contract as one made for benefit
    of corporate assignor and not relegated to reduced assets of
    purchased corporation.

3. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STATUTE OF LIMITA-
    TIONS.
    In action to recover for services performed as an attorney, ques-
    tion of the running of the statute of limitations is not con-
    sidered where it was not briefed.

4. CONTRACTS—INFLUENCING PUBLIC OFFICERS—PUBLIC POLICY.
    Contracts in their nature calculated to influence the action of
    public officers, and the effect of which is to influence them one
    way or the other, are against public policy and void.

5. ATTORNEY AND CLIENT—ADVOCACY BEFORE EXECUTIVE AND LEGIS-
    LATIVE OFFICIALS.
    It is not illegal, per se, for an attorney openly to advocate the
    cause of his client before executive or legislative officials with
    respect to a permissive use of the client's products as the
    functions of an advocate are not confined to judicial forums.

6. SAME—ADVOCACY AS TO ORDINANCE AFFECTING CLIENT'S PRODUCTS.
    Services indicated by record that were rendered by attorney in
    protecting interest of client, a manufacturer of refrigeration
    machinery, in securing permissive use of such manufacturer's
    products in, and the drafting and passage of a new refrigera-
    tion code for, a large city where manufacturer desired to sell
    its products held, neither illegal nor contrary to public policy.

7. PRINCIPAL AND AGENT—AUTHORITY—STATEMENTS—ADMISSIBILITY.
   If one party refers another to a third person for information, as authorized to act or answer for him, he will be bound by the actions and statements of the person so referred to; but admissibility of such other's statements depends upon extent of delegated authority.

8. ATTORNEY AND CLIENT—PRINCIPAL AND AGENT.
   The employment of counsel does not differ in its incidents, or in the rules which govern it, from the employment of an agent in any other capacity or business.

9. PRINCIPAL AND AGENT—IMPLIED POWER—APPARENT AUTHORITY—QUESTION FOR JURY.
   The implied power or apparent authority of an agent is usually to be gathered from the facts and circumstances in evidence and is generally a question for the jury.

10. SAME—CORPORATIONS—EVIDENCE OF AUTHORITY—STATEMENTS OF OTHERS.
    Defendant corporation's attorney, who was also its secretary and agent for investigating plaintiff's claim against defendant for services rendered as an advocate relative to ordinance affecting products manufactured by defendant's corporate predecessor and which it desired to sell in a large city *held*, under evidence presented, not proved to have been duly authorized expressly to bind defendant by suggesting to plaintiff that he procure statements from others relative to his claim and, where question of whether such attorney and secretary was given implied authority or had apparent authority to do so was not even submitted to jury, such statements were inadmissible.

11. CORPORATIONS—AGENTS.
    A corporation may act only through its agents.

12. SAME—DIRECTORS—POWERS.
    An individual director, as such, has no power to bind the corporation by agreements with third persons.

13. SAME—AGENTS—AUTHORITY—ADMISSIONS.
    While a corporation may be bound by the acts of one who is held out as having authority to act for it in its business, it does not thereby subject itself to liability for admissions, made by such person, disconnected with the business of principal.

14. SAME — DIRECTORS — SUBSEQUENT ADMISSIONS REGARDING PAST TRANSACTIONS.
    Statements of directors of a corporation, made in their capacity as such directors or agents of the corporation, regarding plain-

tiff's claim for services long before rendered while they were directors and containing admissions of corporate liability, *held*, not binding on such corporation or its successor, defendant herein, where such statements were not *res gestæ* nor made in connection with the performance of the business of the corporation or its successor.

15. SAME—CONTRACTS—AUTHORITY TO MAKE.
    A corporation cannot be held to have contracted unless by such agents or officers as have express or implied authority.

16. SAME—DIRECTORS AS AGENTS.
    Rule that directors of a corporation are its agents is not an arbitrary one and should not be applied without regard to the circumstances of the case.

17. SAME—DIRECTORS—COMPETENCY OF ADMISSIONS—RES GESTÆ.
    Admissions of directors of a corporation, like those of any other agent, may be competent under certain circumstances, *i. e.*, when such admissions constitute a part of the *res gestæ* and not when stated at a subsequent time.

18. EVIDENCE—PRINCIPAL AND AGENT—ADMISSIONS.
    Admissions must accompany the transaction in which the agent acted in order to bind his principal and if made either before or after period of employment by party against whom they are sought to be used they are inadmissible.

19. SAME—CONTRACTS—AGENT'S STATEMENTS AS TO PAST EVENTS.
    Contracts cannot be established by statements of an agent made years afterwards.

20. SAME—CORPORATIONS—DIRECTORS—SUBSEQUENT STATEMENTS AS TO PAST EVENTS—ARGUMENT OF COUNSEL.
    Reception in evidence of letters, comprising hearsay evidence, by persons who were directors of defendant corporation's corporate predecessor, admitting liability to plaintiff for services rendered while they were directors, in plaintiff's action for services rendered as an attorney for such predecessor, *held*, reversible error in view of reported argument to jury by plaintiff's counsel and other circumstances.

21. APPEAL AND ERROR—QUESTIONS REVIEWABLE—EXCESSIVE VERDICT—ARGUMENT OF COUNSEL.
    Upon reversal of case for error in admission of testimony, questions of excessiveness of verdict and claimed improper arguments of counsel are not reviewed.

Appeal from Wayne; Chenot (James E.), J. Submitted October 14, 1936. (Docket No. 85, Calendar No. 39,137.) Decided March 2, 1937.

Assumpsit by Eugene L. Garey against Kelvinator Corporation, a Michigan corporation, for legal services. Verdict and judgment for plaintiff. Defendant appeals. Reversed with new trial.

*Edward N. Barnard,* for plaintiff.

*Wiley, Streeter, Smith & Ford,* for defendant.

BUSHNELL, J. Defendant appeals from a judgment entered in favor of plaintiff upon a verdict by a jury for $21,975 on a claim of $35,000 for legal services rendered to Nizer Corporation, a Maryland corporation. All the liabilities of Nizer, according to plaintiff's declaration, were assumed by Kelvinator Corporation of Michigan, then known as Electric Refrigeration Corporation, when it acquired the assets of Nizer.

Four questions are involved:

1. If he be a creditor of the Maryland corporation, can plaintiff maintain an action at law against the Michigan corporation under the terms of a certain written agreement between the two companies?

2. Was plaintiff's claimed agreement with Nizer illegal and contrary to public policy?

3. Did the trial court err in admitting as a part of the proof of plaintiff's employment and the value thereof certain letters written by former officers and directors of Nizer?

4. Was the jury's verdict excessive, contrary to the weight of the evidence and the product of prejudicial and improper argument by plaintiff's counsel?

The enforcement of a refrigerating ordinance of the city of New York was in the hands of the fire department. The ordinance provided for a right of appeal from the orders of the fire commissioner to the board of standards and appeals. The Nizer Corporation built and sold to the public automatic refrigerating cabinets, charged with sulphur dioxide, and intended for storing ice cream, etc. The use of this type of machine was made economically impracticable by the ordinance, although the Nizer unit, if approved by the fire commissioner, might come within the exemptions of the code.

Plaintiff, an attorney located in New York City, claims that he was retained to protect the interests of Nizer in the drafting and passage of a new refrigerating code, while defendant says that he was retained to handle certain complaints and notices having to do with ordinance violations, for which he was paid in full.

During the fall of 1926, while plaintiff claims that he was performing the services in question, Nizer sold all of its assets, except $10,000 in cash, to Kelvinator, then known as Electric Refrigeration Corporation, in consideration of the surrender and cancellation of all of Nizer's outstanding stock then owned by Electric, except a small amount, and Electric's written agreement to pay and discharge all of Nizer's liabilities.

Defendant argues that plaintiff, as a third party beneficiary to this agreement, does not have an action at law on his claim, but must seek his relief, if any, in equity, citing *Pearce v. Schneider*, 242 Mich. 28; *Tapert v. Schultz*, 252 Mich. 39; *Peoples Savings Bank v. Geistert*, 253 Mich. 694, and other authorities therein mentioned.

Plaintiff argues that he may maintain an action at law under the authority of *Shadford* v. *Railway,* 130 Mich. 300, and *Morlock* v. *Mount Forest Fur Farms of America, Inc.,* 269 Mich. 549.

The retention by Nizer of $10,000 in cash at the time of transfer of all its other assets, the surrender and cancellation of 252,925 shares of its 253,087 shares of issued class B common stock and the decrease of its authorized capital stock to 200 shares of class B common stock, left the assets of Nizer so small in comparison to its former size as to make the argument untenable that Nizer's creditors must either seek redress from the reduced assets or file a bill in equity. Agreement with this argument would ignore certain decisions of this court and the plain terms of Electric Refrigeration's written obligation which reads in part:

"Electric Refrigeration Corporation, a Michigan corporation (hereinafter called the 'obligor'), for itself and its successors and assigns, hereby assumes and agrees to pay or cause to be paid or otherwise discharge or cause to be discharged from all obligations and liabilities, whether firm or contingent, of every name, nature and description (including, but without limiting the generality of the foregoing, liabilities for tort and liabilities for taxes), according to their tenor outstanding on the day of the date hereof of Nizer Corporation, a Maryland corporation (hereinafter called the 'vendor'); and the obligor further agrees faithfully to perform, according to the terms thereof, all contracts and agreements existing at the date hereof, heretofore lawfully undertaken and made by the vendor, but only to the extent that the vendor would be required to perform the same."

Whatever refinements may exist in the law of creditors' rights arising out of agreements to purchase,

merge or consolidate corporations, the *Morlock Case, supra,* states the rule by which these parties are bound under the facts in the instant case. The conclusion in the *Morlock Case* was reached by reasoning from *Grenell* v. *Detroit Gas Co.,* 112 Mich. 70, 72; *Chase* v. *Michigan Telephone Co.,* 121 Mich. 631, 634; *Shadford* v. *Railway, supra,* and *Howell* v. *Lansing & Suburban Traction Co.,* 146 Mich. 450. On page 559 of the *Morlock* opinion, we adopted 8 Thompson on Corporations (3d Ed.), p. 157, § 6074, which states:

"Where a corporation purchased the assets of another and expressly agreed to pay its debts, the creditors of the latter may sue such purchasing corporation on the contract as a contract made for their benefit."

Appellant contends that *George Realty Co.* v. *Gulf Refining Co.,* 275 Mich. 442, which denied a legal action to a creditor of the selling corporation, limits and restricts the operation of the rule in the *Morlock Case,* and that the reasoning of the *George Realty Case* should be applied here. Defendant points out that in the *Morlock Case* all of the assets in the selling company were transferred to the buying company and payment was made in stock, while in the *George Realty Case,* only a part of the selling company's assets were transferred and payment was made in cash rather than stock. Appellant contends that because of a similarity of facts, the *George Realty Case* is controlling.

In the instant case, plaintiff alleged in his declaration:

"That sometime subsequent to the matters hereinbefore set forth defendant Kelvinator Corporation, which at the times aforesaid owned all or practically

all of the capital stock of said Nizer Corporation, did enter into a transaction with said Nizer Corporation and certain other corporations in which it likewise owned all or practically all of the capital stock whereby among other things said Nizer Corporation did sell, assign and transfer over unto defendant Kelvinator Corporation all its property, assets and business and whereby defendant corporation did assume and agree to become liable for and to pay all the obligations of Nizer Corporation, including its obligation to plaintiff as aforesaid.''

The record does not contain the details of the so-called merger or consolidation of Nizer with Electric Refrigeration Corporation, but defendant's answer to the declaration says:

''As to paragraph 5, it denies that at the times aforesaid it owned all or practically all of the capital stock of the said Nizer Corporation. *It admits that it afterwards acquired all the property, assets, and business of said Nizer Corporation.* It denies that it ever assumed or agreed to pay any obligation owing by said Nizer Corporation to the plaintiff. It admits that it agreed with said Nizer Corporation to assume and pay such of its obligations as were then disclosed by said Nizer Corporation's books of account and balance sheet; and that the plaintiff's alleged claim was not so disclosed. It avers that said agreement was made in the State of Michigan and was personal to the said Nizer Corporation and was not made to or with the plaintiff. This defendant further says that said agreement with the said Nizer Corporation was made more than six years before the beginning of this action.''

This admission that Kelvinator acquired all the property, etc., of Nizer and the unqualified assumption of its liabilities as provided in the written agreement, from which we have quoted, brings the

transaction squarely within the rule in the *Morlock Case*, unaffected by the factual situation found in the *George Realty Case*. The question of the running of the statute of limitations was not briefed, and is not considered. Plaintiff, if a creditor of Nizer, may maintain an action at law against Kelvinator.

Appellant's second proposition is that the judgment should be set aside because the case was submitted to the jury in such a manner as to leave it free to award a verdict based in whole or in part on the plaintiff's alleged illegal services in paralyzing the New York City fire department in its enforcement of the then existing refrigerating ordinance; and, that in persuading inspectors and commissioners not to make or press criminal complaints against certain users of Nizer machines, plaintiff violated rules of public policy.

If the services rendered were illegal or contrary to public policy, plaintiff should not be permitted to recover.

"Contracts in their nature calculated to influence the action of public officers, and the effect of which is to influence them one way or the other, are against public policy, and void." *Robinson* v. *Patterson,* 71 Mich. 141, 149.

The ordinance in question contains the following:

"Sec. 221. Exemptions.

"1. Surplus storage. Refrigerating plants may store a surplus stock of the refrigerating chemical of two cylinders or, if necessary, a quantity not to exceed ten per cent. of the charge of the plant. No cylinders containing gas under pressure shall be stored in the boiler room.

"2. Refrigerating machines of less than three tons capacity. The fire commissioner may exempt from

the provisions of this article refrigerating machines of less than three tons refrigerating capacity, provided a certificate of approval has been issued for such machine.''

Defendant argues that the record does not show that any such certificate of approval was ever issued or that Nizer's machines were either more or less than three tons capacity.

We are primarily concerned with the broader question of whether or not plaintiff's claimed services contemplated action which was illegal or contrary to public policy. We are not required in this appeal to pass upon the language of the ordinance but rather upon the question of whether or not the services were within the contemplation of the terms just quoted. The second subsection authorized the fire commissioner to exempt certain refrigerating machines from the prohibitions of the ordinance. It seems elementary that it is not illegal, *per se,* for plaintiff to advocate the cause of his client with respect to a permissive use of its products. The functions of an advocate are not confined to judicial forums and advocacy other than before courts is a well-recognized part of the practice of the profession.

''Professional advocacy other than before courts.

''A lawyer openly, and in his true character may render professional services before legislative or other bodies, regarding proposed legislation and in advocacy of claims before departments of government, upon the same principles of ethics which justify his appearance before the courts; but it is unprofessional for a lawyer so engaged to conceal his attorneyship, or to employ secret personal solicitations, or to use means other than those addressed to the reason and understanding, to influence action.'' Canons of Professional Ethics, American Bar Association Proceedings 1935, p. 690.

The services indicated by the record were neither illegal nor contrary to public policy.

We do not deem it necessary, for decision of this appeal, to pass upon the disputed question of defendant's charge that plaintiff was guilty of a breach of professional conduct.

The controlling question in this appeal is that pertaining to the admission in evidence of certain letters marked as exhibits Y-1, Y-2 and Y-3, all of which were addressed to defendant's New York counsel, Eustace Seligman.

Plaintiff says that he was retained by Nizer at a meeting held in New York City in 1924 while he was counsel for Prince & Whitely, brokers, who were then marketing an issue of Nizer stock. He stated that his relations with J. M. Hoyt, a senior partner of the brokerage firm, were very close, and that Hoyt, now deceased, and other officers and directors of Nizer were present. Plaintiff's testimony regarding the details of this meeting was somewhat limited by the exclusion of such matters as were equally within the knowledge of deceased persons. See 3 Comp. Laws 1929, § 14219.

Prior to the trial and during his settlement negotiations with Kelvinator plaintiff secured letters (exhibits Y-1, Y-2 and Y-3) from Glazebrook, Hoyt and Cowan dated March 10, April 5 and June 12, 1930, respectively. The Electric Refrigeration-Nizer transaction was accomplished in 1926, during which time Garey claimed to be acting under a retainer by Nizer. Glazebrook was an officer and director of the Nizer Corporation, but his connection with that company and its successors had terminated before exhibit Y-1 was written. Although he was living in New York City at the time of trial,

he was not produced as a witness nor was his deposition taken. Hoyt had been a director of Nizer and plaintiff claims he was still acting as such when exhibit Y-2 was written, but he died before the trial. Cowan, who signed exhibit Y-3, was president of Nizer in 1924, but terminated his connection in 1925, and also died before the trial.

When first objected to by defendant upon the ground that the respective writers had ceased to be officers or directors of defendant's corporate predecessor and therefore their statements had no binding force, the letters were excluded. When the court was informed that the letters were secured at the suggestion of Merlin Wiley, secretary of Kelvinator, who also acted as attorney for defendant in the matter, and that the purpose of the letters was to ascertain the real facts of plaintiff's claimed employment and nothing more, the trial judge, over the renewed objection of defendant's counsel, permitted the exhibits to be read to the jury.

The letters were all in the same vein and their effect upon the jury's verdict can be surmised by the following excerpts from the exhibits:

"Mr. Garey was employed on behalf of the Nizer Corporation, by Mr. Cowan, then its president, Mr. Crouse and Mr. Tremaine, then directors. I understood he was to be paid a reasonable fee for his services and his necessary out-of-pocket expense in connection therewith. * * *

"Mr. Garey protected our interests in its various phases and made arrangements so as to permit the sale of our product in New York City pending the adoption of the code. * * *

"I am of the opinion that the services which he rendered were of real value to the Nizer Corporation and that Mr. Garey should be properly com-

pensated for his efforts in our behalf which were made by him at the specific request of the Nizer Corporation."

"Mr. Garey has shown me a copy of Mr. Glazebrook's letter to you dated March 10, 1930.

"I want to reiterate the accuracy of all the facts that are therein set forth and in addition thereto go much further.

"To my personal knowledge Mr. Garey did this job exceptionally well, gave a great deal of his time to it and unusual hours because the nature of the work required it. I think the corporation has treated him rather badly in not taking care of this bill promptly, and I personally would be glad to see that the matter is now fairly adjusted with him without further delay."

"If my remembrance is correct, sometime in 1924 it appeared that the proposed code for New York City as recommended by the New York City fire department might seriously affect the business of the Nizer Corporation in that territory, and at the suggestion, I think, of Mr. Hoyt of Prince & Whitely, Mr. Garey was retained to represent the company in the matter. * * * Up to the time I left for Europe, however, Mr. Garey had been quite active in his efforts to secure amendments to the proposed code satisfactory to us, and his work in this connection had been entirely satisfactory.

"As I remember it now, no understanding was had at the time of his employment as to the basis for his remuneration—if there was I do not remember it now. At the time of the engagement of Mr. Garey's services, I was president of the Nizer Corporation."

The only direct testimony in the record tending to show the employment of Garey by Nizer was that of plaintiff himself and the contents of the three letters from which we have quoted. Tremaine, a

former president of Nizer, and Replogle, whom plaintiff says were present when he was retained, testified that they had no recollection of such an arrangement. Michaels, an engineer in the employ of the city of New York, who drafted the original mechanical refrigerating ordinance, the regulations concerning it, and who claims to have drafted the one about which this lawsuit centers, testified that he did not know Garey, had never seen him before the day of the trial and that so far as he knew, Garey had nothing to do with any ordinance or code drafts. The foregoing witnesses for defendant all made unequivocal statements and none except Berresford, at one time Nizer's executive vice-president, admitted having any information regarding Garey's connection with code matters. Berresford talked to Garey in April of 1926 at Hoyt's suggestion. This witness testified that Garey "did not make any claim he was an attorney employed by Nizer. I told him that I was executive vice-president of Nizer. * * *

"I did not request Mr. Garey to secure any changes in this ordinance. I had very few, if any, subsequent conversations with Mr. Garey. I think I went to his office once more. I cannot remember when it was."

The letters are mere hearsay, and, unless competent under an exception to the rule prohibiting such testimony, are inadmissible.

"A letter from George Hayes, the son of Mr. and Mrs. Hayes, written to a friend, was admitted, upon the theory that he was a co-conspirator with his parents. It was not introduced by way of impeachment, nor was it a letter so connected with the transaction as to be a part of the *res gestæ*. It was

hearsay, and was no more admissible than the statements of an agent made after or during the pendency of a transaction, but not in connection with or furtherance of it." *Webber* v. *Hayes,* 117 Mich. 256, 261.

See, also, *Kolodig* v. *Highland Park State Bank,* 226 Mich. 197, 199.

Plaintiff argues that the letters were admissible under the rule stated in *Hardy* v. *Tittabawassee Boom Co.,* 52 Mich. 45, which case counsel says is "on all fours" with the instant case. The letter in the *Hardy Case* was written by the Boom company's superintendent, Malcom, in support of Hardy's claim for a 15 per cent. bonus if he remained in the company's employ during the whole rafting season. The court held that the letter was competent, saying:

"Malcom's letter to the president of the company, dated December 12, 1882, should have been admitted in evidence. It was obtained, at the instance of the defendant, for the purpose of ascertaining the terms of the contract its superintendent had made with the plaintiff and the extent of liability thereunder."

The circumstances surrounding the admission of this letter are sparingly given in the opinion. We do not know the extent of Malcom's authority to bind the company by statements as to past transactions; evidently it was deemed sufficient to permit the admission of his letter. Malcom could not have bound defendant by statements regarding a past event, merely by reason of his being superintendent. (See authorities cited below.) One may voluntarily bind himself by reference to what another will say (*Marx* v. *King,* 162 Mich. 258, 264), but the admissibility of such statements always depends upon the

extent of the delegated authority. The *Hardy Case* is not authority for the rule that an agent may bind a principal merely because of the agency; it must have been decided upon the theory that there was a proper delegation of such authority.

The *Hardy* opinion does not refer to the former case of *Rosenbury* v. *Angell,* 6 Mich. 508, where statements by business men of the locality, to whom the witness was referred by plaintiff, were offered under the theory that Rosenbury thereby intended to make or had made these men "his agents or referees with authority to determine his rights or to speak for him," etc. The court held (p. 517):

"Under these circumstances, we can discover no principle upon which the evidence could be admitted, without throwing open the door to mere hearsay evidence generally."

After a discussion of the authorities on the subject, the court said (p. 520):

"There may be cases in which the circumstances, and the mode of reference, may be such as to make it a question of fact for the jury, under the charge of the court, to determine whether the reference was intended to make the third person an agent, with authority to speak for the party; but where, as in this case, the court can clearly see that there is no ground for such an inference, the declarations cannot be admitted on this ground."

For other authorities see 97 A. L. R. 375.

We said in *Marx* v. *King, supra:*

"This court has repeatedly held that if one party refers another to a third person for information, as authorized to act or answer for him, he will be bound by the actions and statements of the person

so referred to. *Reeves* v. *Kelly,* 30 Mich. 132;
*Beebe* v. *Knapp,* 28 Mich. 53; *Beebe* v. *Young,* 14
Mich. 136; *Rosenbury* v. *Angell,* 6 Mich. 508."

Wiley's authority to bind Kelvinator by refer-
ence to other parties depends upon the extent of
his apparent, express or implied powers in the
premises.

"The employment of counsel does not differ in its
incidents, or in the rules which govern it, from the
employment of an agent in any other capacity or
business." *City of Detroit* v. *Whittemore* (sylla-
bus), 27 Mich. 281.

See, also, *Genrow* v. *Flynn,* 166 Mich. 564, 566
(35 L. R. A. [N. S.] 960, Ann. Cas. 1912 D, 638).
Implied power of an agent is usually to be gathered
from the facts and circumstances and is generally
a question for the jury. *Kerns* v. *Lewis,* 249 Mich.
27, 30.

We held in *First National Bank of Ann Arbor*
v. *Holmes,* 213 Mich. 41, 59:

"The apparent authority of an agent to act as
the representative of his principal is to be gathered
from all the facts and circumstances in evidence,
and, ordinarily, this is a question of fact for the
jury's determination. 21 R. C. L. p. 584, *et seq.;*
*Austrian & Co.* v. *Springer,* 94 Mich. 343 (34 Am.
St. Rep. 350), and cases cited."

The Garey claim was referred by Woodbridge,
then president of Kelvinator, to Wiley, as its at-
torney, for investigation. The record does not show
that Wiley was expressly authorized to bind de-
fendant by the statements of other parties. The
questions as to whether Wiley was given implied
authority or whether he had apparent authority

to do so, was not submitted to the jury for its determination. The authority of Wiley to bind defendant by his suggestion to Garey that he procure statements from others has not been proved and the exhibits herein discussed are not admissible under the *Marx* v. *King* rule.

What has been said of Wiley's acts as an attorney for defendant applies in like manner to his acts as defendant's secretary or agent. A corporation may act only through its agents. *Fox* v. *Spring Lake Iron Co.,* 89 Mich. 387, 399 (16 Am. Neg. Cas. 31) ; *Miller* v. *Railroad Co.,* 196 Mich. 297, 306; *Douglas* v. *Insurance Co. of North America,* 215 Mich. 529, 536.

Assuming that Glazebrook, Hoyt and Cowan as directors were at one time agents of Nizer, can their subsequent statements made in their capacity of directors or agents, regarding a past transaction, have any binding effect upon Nizer and Kelvinator?

Passing on the power of a director to bind his corporation by statements or admissions, we said in *Allington & Curtis Manfg. Co.* v. *Detroit Reduction Co.,* 133 Mich. 427, 435:

"There was further evidence as to the relation of Mr. Rowley to the work at Cripple Creek, and plaintiff's counsel claim that this shows that he was, with Barnes, in charge, and exercising authority consistent with the power to speak for the company. This testimony was undisputed, and was received under objection, and upon the undertaking to show that Mr. Rowley was really in charge of the work, and this was not done. These admissions were not a part of the *res gestæ.* They did not occur in connection with the performance of any act relating to defendant's business, within the scope of Rowley's authority. He was a director. As such, he had no

power to accept this work, or to bind the company by an agreement in relation to it. The testimony that he was at Cripple Creek, giving directions, and that Barnes told Fralick that Rowley was going to Chicago, and would fix the matter up with Allington, even if Rowley was authorized to do that, would not make the admissions of Rowley to Fralick binding upon the company. While a corporation may be bound by the acts of one who is held out as having authority to act for it in its business, it does not thereby subject itself to liability for admissions made by such person, disconnected with the business of the principal. See Mechem, Agency (1st Ed.), §§ 714, 715.''

This case controls the instant situation insofar as the director relationship is concerned.

''A corporation cannot be held to have contracted unless. by such agents or officers as have express or implied authority. * * * Individual directors have no power whatever to bind a corporation.'' *Lockwood* v. *Thunder Bay River Boom Co.,* 42 Mich. 536.

See, also, 7 R. C. L. p. 620, § 616, and 2 Fletcher, Cyclopedia Corporations (Perm. Ed.), p. 741, § 741.

While we have said that ''the directors of a corporation are its agents, * * * the rule is not an arbitrary one. It is founded on reason, and should not be applied without regard to the circumstances of the case.'' *Ten Eyck* v. *Railroad Co.,* 74 Mich. 226, 232 (3 L. R. A. 378, 16 Am. St. Rep. 633). Their admissions, like those of any other agent, may be competent under certain circumstances.

We quoted the following from *Converse* v. *Blumrich,* 14 Mich. 109, 122 (90 Am. Dec. 230), in *Hughitt* v. *Sayen,* 218 Mich. 451, 456:

''But the admissions of an agent are only evidence against the principal when they constitute a

part of the *res gestæ*. They must accompany the transaction in which the agent acted; what he stated at a subsequent time is inadmissible."

And we also said in the same case:

"To bind the principal admissions must accompany the transaction in which the agent acted. If made before the agent was employed by the party against whom they are sought to be used or after such employment terminated, they cannot be received in evidence. 22 C. J. p. 380. That rule is of long standing in this jurisdiction."

"Contracts cannot be established by statements of an agent made years afterwards." *Maxson* v. *Railroad Co.*, 117 Mich. 218, 222.

"It has many times been held by this court that the declarations of an agent as to a past transaction are inadmissible to bind the principal." *Andrews* v. *Tamarack Mining Co.*, 114 Mich. 375, and authorities cited at page 379.

Appellee, in a reply brief, says *Golden Age No. 2 Mining & Milling Co.* v. *Langridge,* 39 Col. 157 (88 Pac. 1070), is squarely in point. It may be in point on the facts but its conclusions of law do not conform to the rule applied in Michigan. In the Colorado case, a letter written by a director and officer as to happenings at a meeting of the board of directors was admitted in evidence to show the authority vested by the board in its general manager. Such testimony regarding a past transaction is not admissible here under the rule stated in the *Andrews Case.*

The letters in question were improperly admitted and their reception in view of the reported argument of plaintiff's counsel to the jury, coupled with the circumstances of the instant case, makes their admission reversible error.

We are unable on this record to say that the verdict of the jury was contrary to the weight of the testimony. In view of the foregoing it is unnecessary to pass upon the questions of excessive verdict and claimed improper arguments of counsel.

The judgment is vacated and the cause remanded for a new trial, with costs to appellant.

North, Butzel and Sharpe, JJ., concurred with Bushnell, J. Fead, C. J., and Wiest, J., concurred in the result. Toy, J., took no part in this decision. Potter, J., did not sit.