### BYLAN v. DOSSIN'S FOOD PRODUCTS.

1. CONTRACTS—INDEMNITY—AUTHORITY OF SALES MANAGER—DIS-
TRIBUTOR OF SOFT DRINKS.
    In local soft drink distributor's action against State distributor
    to recover indemnity for losses sustained in plaintiff's territory
    for duration of agency, evidence presented questions of fact
    as to whether defendant's sales manager had authority to
    make alleged contract of indemnity as inducement for plain-
    tiff to continue the distributorship during the winter months
    in a summer resort area and whether or not such indemnity
    agreement was made.

2. PRINCIPAL AND AGENT—IMPLIED AUTHORITY—QUESTION FOR JURY.
    Implied authority is to be gathered from facts and circum-
    stances, and is usually a question for the jury.

3. SAME—MISTAKE OF GENERAL AGENT—AUTHORITY.
    When one invests another with general authority and discretion,
    and it is exercised in the due course and furtherance of the
    principal's business, the latter is not relieved from the conse-

* See Const. 1908, art. 2, § 16.—REPORTER.

quences of a mistake of judgment of the agent, either as to the extent of his authority or the manner of exercising it, as against third persons, nor is the authority to be limited to the principal's unexpressed intention.

4. DAMAGES—EVIDENCE—LOSSES OF DISTRIBUTORSHIP.
In local soft drink distributor's action against State distributor to recover losses sustained in plaintiff's territory for duration of agency under contract of indemnity alleged to have been made by defendant's sales manager as an inducement to continue the local distributorship during the winter months in an area largely composed of territory devoted to the summer resort business, evidence as to damages *held*, sufficient to sustain verdict that was in an amount less than plaintiff claimed.

Appeal from Wayne; Toms (Robert M.), J. Submitted October 3, 1944. (Docket No. 7, Calendar No. 42,712.) Decided November 30, 1944.

Assumpsit by H. J. Bylan and Paul Browne, copartners, against Dossin's Food Products, a Michigan corporation, for an alleged indemnity agreement. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

*Rosenburg, Painter & Navarre,* for plaintiffs.

*Frederick A. Schopp (John Sklar,* of counsel), for defendant.

BUTZEL, J.   Plaintiffs, copartners in the business of distributing beers, wines and beverages in the cities of Grand Rapids and Flint, Michigan, desired to obtain the agency for these cities for the sale of "Pepsi-Cola" from defendant Dossin's Food Products, the State distributor of this beverage for almost the whole of Michigan and a small part of Ohio.   In June, 1939, plaintiffs called at defendant's place of business in the city of Detroit for the pur-

pose of securing the agency for Flint, Michigan. They asked for Mr. Dossin and were told he was not in. Upon stating to the young lady in charge of the office the nature of their business, they were referred to L. L. Baushke in defendant's office as the proper party to see. He was also out but they returned a few days later and interviewed Mr. Baushke, the sales manager, who told them there was a possibility of their eventually securing the agency for Flint and Grand Rapids. Shortly thereafter they received a telephone call from Baushke asking whether they would be interested in the agency for Muskegon where he represented defendant was selling through the local agency about 300 cases of Pepsi-Cola a week, but that the agent was not satisfactory. Baushke told them that by taking on the Muskegon territory and doing a good job, they would enhance their chances of obtaining the Flint and Grand Rapids territories. They took on the Muskegon territory but soon found that instead of there being in the neighborhood of 300 cases of Pepsi-Cola sold weekly, as Baushke had represented, the weekly sales were about 100 cases; that there were only 50 old accounts and of these only 22 were going accounts. They also found that the previous distributor for the Muskegon territory had a much larger territory than was given to them. They claim that they notified Baushke of these facts, but that they continued to operate in the hope and expectation that they would be able to secure the Flint and Grand Rapids territories. They did increase the business very materially. Bylan testified that he appointed his brother-in-law as manager of the Muskegon territory and, although he showed progress, Baushke insisted upon his discharge. Baushke also insisted upon the discharge of one of the drivers; also that plaintiffs use two trucks instead of one.

In September, 1939, plaintiffs wanted to give up the distributorship and stated that they had not made any money during the summer, that the winter season was coming on, but Baushke asked them to carry on, that the product had been handled by several distributors, that "we do not want to make a change at this time—make another change." Both Browne and Bylan testified that Baushke told them that if plaintiffs would continue to carry on during the winter months, he would see that "Dossin's made good the loss;" that for that reason they continued to carry on; at that time Baushke also again held out the possibility of plaintiffs' securing the Grand Rapids and Flint territories.

Plaintiffs continued the business at a substantial loss during the winter season when, owing to the shut-down of the summer resort business, the sales naturally fell off. The agency was terminated in May, 1940, when it was turned over to a party who worked for plaintiffs. A third party also testified that he heard Baushke make this promise. Baushke denied making it.

The questions are raised on appeal whether Baushke had been authorized to make the promise of indemnity and whether he did make it. He evidently was vested with considerable authority. He was sales manager. He was anxious to secure a sales agency for the Muskegon territory. He not only entered into the contract but gave orders to plaintiffs as to how to run the business. He had authority to look after advertising for defendant. Letters were introduced; these were signed "Dossin's Food Products, L. L. Baushke." Sales were not being made on his behalf but for defendant. Baushke would not be apt to bind himself personally to pay plaintiffs' losses. If Baushke made the statements attributed to him and they were made in consider-

ation of plaintiffs' continuing as distributors, they did not convey any intention to bind Baushke but clearly to bind defendant. There was sufficient testimony introduced to make it a question of fact for the jury to determine whether a sufficient promise was made to induce plaintiffs to retain the Muskegon agency for the winter months, and whether Baushke had the authority to make it. The judge left it for the determination of the jury whether a sufficient agreement had been made so as to bind defendant and whether from the facts, it was shown that Baushke had the authority to bind defendant, and also to ascertain the amount of plaintiffs' loss if defendant was obligated to pay it. The jury found in plaintiffs' favor.

The correspondence showed that Baushke advised plaintiffs as to what advertising they would receive without cost and what they would have to pay for. The testimony indicates that Baushke's authority was not limited to assignments of territory, determination of distributorships and setting of retail prices, but that he had full authority to push defendant's sales in Michigan outside of Detroit and in Toledo and some surrounding counties in Ohio. The alleged agreement was made in the fall of 1939, when it is claimed that defendant agreed to stand any losses made by plaintiffs. The contract differed from the previous one that gave plaintiffs the Muskegon territory. This new contract was an inducement for plaintiffs to continue the business at a loss, which as was realized would necessarily become large during the months when the business would fall off.

Defendant has cited many cases but we shall not discuss them as in none of them did the agent occupy a position similar to that held by Baushke. The case of *Constantine* v. *Kalamazoo Beet Sugar*

*Co.*, 132 Mich. 480, is in many respects analogous to the present one. It was held that the agent had a right to guarantee against loss when the prospects of the loss appeared after the season had advanced and in order to induce the grower to continue his operations.

In *Doyle* v. *Widrig,* 207 Mich. 411, we said:

"But plaintiff says there was no competent testimony before the jury that Comstock had the authority to make the arrangement for the additional discount of 18 per cent. It appears that Comstock was plaintiff's general sales manager and that the contract with defendant was made in his office; that he had charge of the associate dealers and sold them cars; that he hired and discharged the help and sometimes signed checks, and plaintiff himself says as to Comstock's authority, that next to him, Comstock was 'it.' This testimony, together with the surrounding circumstances, was sufficient to send the question of his authority to the jury."

In *Kerns* v. *Lewis,* 249 Mich. 27, we stated:

"Implied authority is to be gathered from facts and circumstances, and is usually a question for the jury. When one invests another with general authority and discretion, and it is exercised in the due course and furtherance of the principal's business, the latter is not relieved from the consequences of a mistake of judgment of the agent, either as to the extent of his authority or the manner of exercising it, as against third persons, nor is the authority to be limited to the principal's unexpressed intention. The question was for the jury."

Also, see *Garey* v. *Kelvinator Corp.,* 279 Mich. 174, 190; *Massachusetts Bonding & Insurance Co.* v. *Transamerican Freight Lines, Inc.,* 286 Mich. 179.

Defendant claims that there was not sufficient evidence to show plaintiffs' losses during the winter

months. A certified public accountant testified that he had examined the books and that there was a loss of $1,803.92 for the period beginning October 1, 1939, to April 1, 1940. He excluded the other products sold by plaintiffs and allocated proportionate charges to these different products. Defendants had ample opportunity to cross-examine the witness. The jury awarded plaintiffs $1,500 and costs, an amount less than plaintiffs claimed. The testimony was sufficient to establish the amount of this loss. The verdict was not against the great weight of the evidence.

Judgment is affirmed, with costs to plaintiffs.

North, C. J., and Starr, Wiest, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.