AIMONETTO, Respondent v. RAPID GAS, INC., Appellant

(126 N.W.2d 116)

(File No. 10077. Opinion filed February 4, 1964)

Rehearing denied April 17, 1964

**Hyde & Richards,** Aberdeen, for Defendant and Appellant.

**Bangs, McCullen, Butler & Foye,** Rapid City, for Plaintiff and Respondent.

HOMEYER, J. ■ Plaintiff sued defendant on an insufficient funds check for $5,000. At the close of plaintiff's case in chief defendant moved for a directed verdict which motion was denied. At the close of all the testimony both parties moved for a directed verdict without reserving the right to go to the jury on any fact question involved in the suit. The trial judge denied the motion of the defendant and directed the jury to return a verdict in favor of plaintiff. SDC 1960 Supp. 33.1315(3). We review on the basis that the decision of the trial judge must be sustained unless the clear preponderance of the evidence is against the facts necessarily implied in his direction of the verdict. SDC 1960 Supp. 33.1315. Nielsen v. Warner, 66 S.D. 214, 281 N.W. 110.

Defendant, Rapid Gas, Inc., is a business at Rapid City engaged primarily in retail sales of liquefied petroleum products, i. e., propane and butane gas. Duane B. Hyde, now deceased, was president of the corporation and owned 103 shares of its stock. His wife, Rosella, was secretary-treasurer and owned 50 shares. There were six or seven other nominal stockholders each owning one share, one of whom, Edwin R. Maki, was vice president and sales manager. The board of directors consisted of Hyde, his wife, and Maki. Duane B. Hyde also owned and managed Rapid Traction Company, a bus line at Rapid City, and Hy-Gas Products Company, a gasoline refinery plant near Newcastle, Wyoming. These were unincorporated businesses. He also owned the majority stock in Black Thunder Gas Products, Inc., which owned and operated oil and gas wells near Newcastle and a 50% interest in Town and Country Gas, Inc., at Newcastle, a propane gas distributing company, the other one-half interest being owned by plaintiff and his brother, Leo Aimonetto.

Plaintiff and Hyde were friends and business associates for many years and had frequent contacts. Plaintiff had for sale some upset tubing (oil well pipe) and Hyde negotiated for the purchase of about 9,500 feet at a price of $5,000. At Hyde's direction it was loaded on a truck owned by Town and Country and

checked as to length. Plaintiff did not know specifically where the pipe was to be used or where it was taken. About a week after it was hauled away, Hyde stopped at plaintiff's garage at Newcastle and gave plaintiff a check for $5,000. It was a counter-check dated January 16, 1960, drawn on the Rapid City National Bank and signed "Rapid Gas Inc. Duane B. Hyde." The drawee bank had on file a signature card with specimen signatures of Duane B. Hyde, Rosella W. Hyde and Edwin R. Maki, and a certified copy of a resolution adopted by the board of directors of defendant authorizing each of them to sign all checks and drafts of the corporation drawn on said bank and to endorse for deposit checks and drafts payable to the corporation. Plaintiff deposited the check at a Sundance, Wyoming, bank on January 18, 1960, and upon presentment to the drawee bank it was dishonored because of insufficient funds. On January 27th, the cashier of the Sundance bank again presented the check in person to the drawee bank and payment was refused and the check was stamped "Not Sufficient Funds." Subsequently plaintiff on numerous occasions asked Hyde to pay the check.

Duane B. Hyde was killed in an automobile accident on August 18, 1960. His estate was probated in Pennington County, South Dakota, and Weston County, Wyoming. No claim was made against the estate.

Mrs. Hyde and Maki both testified that they had no knowledge of the pipe purchase; that Hyde had never discussed it with them. They claimed the board of directors of defendant corporation never authorized the purchase of such pipe and the corporation had no use for it in its business.

The check upon being presented for payment and dishonored became an absolute promise to pay and the drawer of the check is in the same position as the maker of a promissory note. State v. Murphy, 74 S.D. 21, 48 N.W.2d 225; Korte v. Lang, 61 S.D. 267, 248 N.W. 253. It was prima facie evidence of a valuable consideration. SDC 46.0201; Green v. Mahoney, 70 S.D. 9, 13 N.W.2d 806. The burden of proof to overcome such evidence was upon the defendant. The defendant does not and could not contend successfully that its proof would sustain a defense of want of consideration.

The issue determinative of this appeal is the authority of Duane B. Hyde as an officer and agent of the defendant to purchase the oil well pipe. Plaintiff maintains there is competent evidence which shows Hyde had (1) actual or real authority, which may be either express or implied, (2) apparent or ostensible authority; or (3) if absent actual or apparent authority, the corporation was the alter ego of Hyde and his act in the purchase of the pipe was the act of the corporation.

A corporation is an artificial legal creation, invisible and intangible, and can act only through its officers and agents. In the absence of evidence to the contrary, it is presumed that the president of a corporation active in its management has authority to do and perform acts necessary to the conduct of the business of the corporation. Merrill v. Hurley, 6 S.D. 592, 62 N.W. 958, 59 Am.St.Rep. 859; Hilton v. Advance Thresher Co., 8 S.D. 412, 66 N.W. 816; Engler v. Ipswich Printing Co., 63 S.D. 1, 256 N.W. 132. The presumption disappears when evidence is introduced from which facts may be found in contravention of the presumption. The presumption only casts upon the party against whom it is used the burden of going forward with the evidence on the matter in issue. The burden of proof remains with the party seeking affirmative relief in the action. McKiver v. Theo. Hamm Brewing Co., 67 S.D. 613, 297 N.W. 445; Honrath v. New York Life Ins. Co., 65 S.D. 480, 275 N.W. 258, 112 A.L.R. 1272; Peters v. Lohr, 35 S.D. 372, 152 N.W. 504.

The authority which Hyde had from the board of directors to write checks on the corporation did not constitute absolute authority to bind the corporation on contract or to obligate it on an insufficient funds check. The authority to draw checks in itself is not authority, express or implied, to borrow money or make notes. Farmers Bank & Trust Co. v. Miller, 80 Colo. 121, 249 P. 644. Nevertheless, it is evidence which may be considered with other facts and circumstances in determining an officer's authority to act for the corporation.

Hyde was interested in an oil and gas project at the LAK ranch near Newcastle. Minutes of a directors' meeting of defendant held on February 27, 1959, include the following: "The president brought the meeting to order and presented new bus-

iness before the board for their approval or disapproval, a proposed venture to supply propane and other materials to be used on certain property located at the LAK ranch, Newcastle, Wyoming, in the drilling of shallow wells. The services of Kenneth Parrent, Geological Engineer of Casper Wyoming will be engaged to supervise the project. The work to begin on mentioned project as soon as weather conditions would permit. On motion made and seconded, it was unanimously voted to approve the project and supply materials as needed." Neither party offered in evidence the articles of incorporation or bylaws of the defendant. No contention is made that approval of the project and purchase of pipe therefor was ultra vires the corporation. Modern business practices generally provide broad corporate charter powers leaving exercise, application, or limitation to bylaws or resolutions of the board of directors. Implicit in the trial and appeal of this case is the assumption that the purchase of the oil well pipe was within the corporate powers provided requisite authority was shown.

Minutes of corporate meetings from 1956 to time of trial were received in evidence. They reveal an interrelated operation between defendant and the multiple corporations and projects owned or controlled by Hyde. The record shows Hyde as the dominating force in their operation. It may be that defendant was primarily interested in the retail sale and distribution of gas products; still it was to its benefit to promote, encourage, and develop sources of supply and markets for distribution of its products. LAK may have been a private enterprise of Hyde, but Mrs. Hyde testified "We had an excess amount of this butane gas and Rapid Gas had no sales for, and it was just a drug on the market. We had absolutely no market for it, and so Mr. Hyde said that if we could take this gas rather than waste it and pump it in the ground over at the L.A.K. Ranch, perhaps it would mix with the oil they thought was under the ground, and they could produce some oil from it, so instead of just pumping this butane, which we had no sale for, back in the ground, or not having a sale for it, we decided with the Minutes of our corporate book to supply this product to my husband along with the geologist, Ken Parrent, to see if it would work, and that was the reason that those minutes were written up so that **we could sell** that gas

to Dwayne personally to be used on that venture, and that had nothing to do with Rapid Gas at all."

There is evidence pipe of the type sold by plaintiff could be used on the LAK enterprise and that some such pipe purchased from plaintiff was used on this project. The corporate minutes quoted authorized the employment of a geologist to supervise the project. The project was approved and it was voted to "supply materials as needed." We cannot say the phraseology used in the directive of the corporate board can only be interpreted as limiting the authority of its administrative officers to the sale of surplus butane and water as contended by defendant. If this is the extent of such authority no corporate action was necessary. A proper inference from the proceedings of the board and evidence is that defendant had a surplus commodity; that it was to its benefit to dispose of it; that to do so, the services of a geologist were needed and materials were required; that it authorized the employment of the geologist and the purchase of such materials, including pipe, necessary to promote the sale of a surplus product. The fact that one of Hyde's other corporations likewise may have furnished pipe to the same project does not foreclose authority of defendant's officers to purchase pipe therefor.

 Liability of a corporation for the acts of its officers is generally governed by the same principles that make an individual as principal liable for the acts of his agent. Fletcher Cyclopedia Corporation, Permanent Edition, § 437. Actual authority of an agent may be either express or implied and incidental. Implied authority includes authority to do whatever acts are incidental to or are necessary, usual and proper to accomplish or perform, the main authority granted the agent. 3 Am.Jur.2d, Agency, § 71. We are satisfied the evidence discloses a fact question as to Hyde's authority to purchase the oil well pipe involved in this litigation. In a case somewhat similar, but absent any directive from the board of directors, Citizens Bank v. Public Drug Co., 190 Iowa 983, 986, 181 N.W. 274, 276, the Iowa court said: "To the proof of the fact that he was president, or chief executive officer of the company, is added other evidence that he was also one of its three directors and the manager of

its business, which, as we gather from the record, was the carrying on of a retail trade in drugs. The entire company was made up of Bronson and his wife and one O'Keefe, who is not shown to have any active hand in the business. Under such circumstances, we think it was a fair question for the jury whether contracts made in the company's name by its president and manager and within the scope of the business it was organized to carry on were made with the implied authority of the corporation; and, if so, and the note in suit be found to have been a contract of that character, and no other defense be established, then plaintiff would be entitled to recover."

We cannot say there was no substantial evidence of implied authority in Hyde to bind the corporation and the trial court should have directed a verdict for defendant.

Inasmuch as both parties moved for a directed verdict, without reserving the right to go to the jury on fact questions, the decision of the judge in granting plaintiff's motion was equivalent to a jury determination of the fact issue that Hyde had implied authority to bind the corporation. SDC 1960 Supp. 33.1315. It has the same effect as if the action had been tried to the court with findings of fact that Hyde as managing president had implied authority to purchase the oil well pipe. This court on appeal will not disturb the findings of the trial court unless they are against the clear preponderance of the evidence. Whitman v. Hanson, 69 S.D. 610, 13 N.W.2d 495. Generally, the authority of an officer or agent to act for his corporation with reference to contracts is a question of fact to be determined by jury under all the circumstances in evidence. Fletcher Cyclopedia Corporations, Permanent Edition, § 488; Garey v. Kelvinator Corp., 279 Mich. 174, 271 N.W. 723.

Since we conclude the evidence is sufficient to sustain the judgment on implied authority, we find it unnecessary to decide whether or not it could be sustained on the basis of apparent authority or on the basis that the corporation was the alter ego of Hyde.

Affirmed.

All the Judges concur.