40914.   WRIGLEY et al. v. NOTTINGHAM.

DECIDED MARCH 16, 1965—REHEARING DENIED MARCH 25, 1965.

*Claude Hambrick,* for plaintiffs in error.
*Grant, Spears & Duckworth, William H. Duckworth, Jr.,* contra.

BELL, Presiding Judge. ■ The defendants contend that their

general demurrers to the petition should have been sustained for the reason that the allegations show that the acts on which the suit was brought were those of the corporation alone and not their personal deeds. The corporation was not joined as a party defendant. The defendants, all officers of the company, were sued in their individual capacities.

The petition alleges injury and damages through the defendants' conduct in maliciously procuring a breach of the plaintiff's contract by the corporation. Allegedly, the agreement had been negotiated and concluded on behalf of the company by Norman J. Wrigley, Jr., as its president and agent. The terms of the contract were pleaded in detail. It is asserted that the contract was subsequently ratified by the corporation and had been partially performed by the parties. It is alleged that Wrigley, Jr. owned all of the voting stock of the corporation although actual control of its affairs rested in the majority of the board of directors. However, it is charged that Wrigley, Jr. could control the corporate acts by reason of his ownership of all the voting stock coupled with his family relationship with members of the board. It is alleged that the conspiracy to effect the breach occurred between the defendants prior to a called meeting of the board of directors although the formal breach was voted by the defendants at the called meeting. As to all defendants, the petition asserts in effect that the breach was procured maliciously and without justifiable cause.

"In all cases he who maliciously procures an injury to be done to another, whether it is an actionable wrong or a breach of contract, is a joint wrongdoer, and may be sued either alone or jointly with the actor." *Code Ann.* § 105-1207.

"The term 'malicious,' used in this connection, is to be given a liberal meaning. The act is malicious when the thing done is with the knowledge of the plaintiff's rights, and with the intent to interfere therewith. It is a wanton interference with another's contractual rights. Ineffective persuasion to induce another to violate his contract would not, of itself, be actionable, but if the persuasion be used for the purpose of injuring the plaintiff, or benefiting the defendant at the expense of the plaintiff, with a knowledge of the subsistence of the contract, it becomes a

malicious act, and if injury ensues from it a cause of action accrues to the injured party." *Employing Printers Club v. Doctor Blosser Co.*, 122 Ga. 509, 519 (50 SE 353, 69 LRA 90, 106 ASR 137, 2 AC 694).

A corporation is nothing more than a robot, created by the law, possessing only that sensibility which its management and agents bring to it. Most corporate liabilities do not attach personally to its stockholders, officers, or agents. The corporation, however, is not so fortunate, as it is often subjected to liability through the tortious misconduct of its management and agents when the wrongs are done in the scope of the agency relationship. This imposition of corporate liability for the acts of its agents does not ipso facto in the eyes of the law relieve the agents from personal accountability for their torts. In actions based on torts committed by corporate agents, the choice of naming the defendant against a possible imposition of ultimate liability frequently rests with the one wronged. The plaintiff may name in his action as a party the corporation alone, or he may name the corporation and the agents, or the agents alone. The choice is usually made on the basis of financial responsibility (usually the corporation alone), or on a combination of fiscal ability and venue or jurisdiction (the corporation and its agent). This does not mean, however, that the plaintiff may not sue the agent alone in his personal capacity. "Joint tortfeasors may be sued jointly or severally." *H. W. Brown Transp. Co. v. Morrison*, 89 Ga. App. 107, 112 (78 SE2d 856) ; *Wall v. Wall*, 176 Ga. 757 (168 SE 893). One who is sued in his personal capacity, whether the alter ego, an officer or agent of a corporation, may not escape personal liability for his tortious misconduct damaging employees or third persons by hiding behind the corporate veil even in those situations where the corporation might also be a proper party to the action. *Burns v. Horkan*, 126 Ga. 161, 167 (6) (54 SE 946) ; *Carpenter v. Williams*, 41 Ga. App. 685, 689 (2) (154 SE 298).

The case of *Kenimer v. Ward Wight Realty Co.*, 109 Ga. App. 130 (135 SE2d 501), decided by the same three judges concurring in this opinion, is cited and relied upon by the defendants in support of their contention that the acts sued upon were solely

those of the corporation. It is contended that this insulated the defendants in their individual capacities from liability.

Based on the facts peculiar to that case, the holding in *Kenimer* was founded on the premise that there was alleged no breach of contract in which the plaintiff had an enforceable interest. There the plaintiff was not a party to the contract under which he sued and had no assigned interest in it. Thus with respect to the contract there could not have been as to him either an actionable wrong or a breach of contract. The mere fact that an existing agreement by mutual consent of the parties was canceled and a new one executed could not constitute an actionable wrong to the plaintiff who had no enforceable interest in the former. We undoubtedly went too far in *Kenimer*, p. 134, by citing and quoting from the *Rhine* case but that quotation was neither applicable to the decision nor pertinent to the issue before us. Furthermore, the quotation used does not mean that corporate agents are in all cases insulated from personal liability for their tortious conduct simply because their actions might have been taken within the scope of the agency relationship. A referral to the *Rhine* case reveals that its holding was predicated on the court's construction of the petition as showing that the only damage alleged was that arising out of the breach of purely contractual duties by the corporation and the conspiracy charged against the individuals amounted to nothing more than a mere conclusion. *Rhine v. Sanders*, 100 Ga. App. 68, 73 (110 SE2d 128). Necessarily, the holding there and the binding authority of its discussion must be restricted to matters properly within the ambit of that construction of the petition. *Rhine's* treatment of any other matter is merely academic.

In the case before us, the plaintiff could have sued the company for breach of contract he alleges was induced by its agents. The fact that he chose to sue in tort under *Code Ann.* § 105-1207 naming as defendants the individuals allegedly responsible for procuring the breach is an election which the plaintiff was authorized to make. See *Code* § 105-105.

The trial court did not err in overruling the general demurrers to the petition.

■ Where several defendants are sued as joint tortfeasors, and the evidence demands a finding that there was no cause of action proved against one of the defendants, the trial judge should grant the latter's motion for judgment notwithstanding the verdict. See *Austin v. Appling,* 88 Ga. 54, 59 (5, 6) (13 SE 955); *Western Union Tel. Co. v. Owens,* 23 Ga. App. 169, 174 (6) (98 SE 116).

There is nothing in the evidence showing or tending to prove that the defendant Jack Cox did anything maliciously to procure the breach of the plaintiff's contract with the corporation or to interfere with the performance of the agreement. The evidence is undisputed that Cox, whose duty it was to countersign the company checks, affixed his signature in advance to blank checks in considerable number thereby placing the full control of the corporate funds in the hands of Nottingham. He thus did not interfere with any right of Nottingham to control the company funds. Although Wrigley, Jr. talked to Cox prior to the board meeting about Nottingham's discharge, Cox made no commitment or pledge to vote for the discharge. Cox's attendance at the board meeting was proper since he was a director. Further, Cox, as a director, had the right to rely on the representation of the company's president, Wrigley, Jr., made at the meeting that Nottingham had been guilty of mismanagement of the company's affairs. Any error Cox may have committed in casting his vote for the plaintiff's discharge, in absence of evidence to the contrary, amounted to nothing more than a mistake of judgment and cannot be taken as a malicious act against Nottingham. Cox devoted only part time to the corporate affairs and, although a director, he was not intimately acquainted with what was going on in relation to its management. There is no evidence showing Cox knew that Wrigley, Jr.'s representations as to the plaintiff's mismanagement of the corporate affairs were false. Although Cox had an investment in the company represented by nonvoting stock, Wrigley, Jr. had organized the company, owned all of the voting stock and from the beginning had been in general charge of the management of the business. There was nothing improper for Cox, in casting his ballot as a director, to rely upon the representations of Wrigley, Jr.

Proof of a conspiracy is lacking, but a conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged, but the tort committed and the damage done. *Woodruff v. Hughes*, 2 Ga. App. 361 (58 SE 551). As to the defendant Cox proof is lacking as to his commission of any act authorizing a recovery against him individually. His motion for judgment notwithstanding the verdict was good and it was error to overrule it.

■ The evidence although conflicting in many particulars authorized the verdict against the defendant Wrigley, Jr.

There appears in the brief of evidence a showing of the following: that the plaintiff entered into a contract with the corporation whereby he would loan money to the corporation and would be reimbursed from the corporate accounts receivable as collected and deposited to the corporation's account. Plaintiff as secretary-treasurer of the corporation would have the exclusive authority to draw checks on the account subject only to the counter-signature of the defendant Jack Cox as vice-president. The defendants knew plaintiff was working for the corporation and knew how he was working for the corporation. Plaintiff had discussed the terms of his contract with the company with the defendant Cox. The oral contract was entered into with plaintiff by Wrigley, Jr., acting on behalf of the company. The company was indebted to the plaintiff through loans and unpaid salary in an amount greater than the verdict. During the time plaintiff was with the company its sales increased and it was in better financial condition than before he came. At the behest of Wrigley, Jr., plaintiff was discharged as secretary-treasurer of the company while he was out of town. No objection had been made to the plaintiff's services to the company prior to his discharge. No mismanagement of company affairs had been called to the plaintiff's attention by any defendant prior to his discharge. Inventory involving a large sum in valuation was conveyed by Wrigley, Jr. to his mother eight days after the plaintiff was discharged. Wrigley, Jr. conveyed some of the company's inventory to himself after the plaintiff's discharge to satisfy a loan which Wrigley, Jr. had made to the company which transfer was done with Cox's consent. Various corporate

bank accounts were opened and reopened by Wrigley, Jr., one in a private individual's name for the purpose of evading proceedings brought against the company's assets by the plaintiff. There was a discussion between the defendants Cox and Wrigley, Jr. concerning the plaintiff's mismanagement of the company's business prior to the called board meeting at which the plaintiff was discharged and at that time Wrigley, Jr. told Cox he was going to make a motion at the meeting to discharge the plaintiff as an officer. Cox, however, made no commitment to Wrigley on Nottingham's discharge prior to the board meeting.

The above extracted portions of the evidence coupled with the brief of evidence as a whole authorized the jury's finding that the discharge of the plaintiff and the subsequent shifting of the assets of the corporation were done by the defendant Wrigley, Jr. with "knowledge of the plaintiff's rights, and with the intent to interfere therewith" and thus was "a wanton interference with another's contractual rights . . . for the purpose of injuring the plaintiff, or benefiting the defendant at the expense of the plaintiff, with a knowledge of the subsistence of the contract" and thus constituted an actionable "malicious act." *Employing Printers Club v. Doctor Blosser Co.,* 122 Ga. 509, supra. The pleadings and the evidence authorized the verdict against Wrigley, Jr.

■ The single special ground of the motion for new trial objects to certain extracts from the trial court's instruction to the jury on the measure of damages. No objection is raised that the excerpts given are incorrect as abstract principles of law. The contention is that the measure of damages was too remote and speculative to permit recovery against the defendants for the reason that plaintiff in his petition alleged the *corporation* was in financial difficulty. This it is urged, made a possible recovery of money allegedly due plaintiff from the corporation under their contract a matter of mere conjecture.

There is no merit in this special ground for numerous reasons. We think it sufficient to point out that the ground is founded on the corporation's inability to pay plaintiff under the terms of its agreement. The court's attention is not directed to any evidence in the record tending to show the corporation would have

been unable financially to recompense plaintiff. The corporation is not a party to the action. No reference is made in the ground to the ability of any of the named defendants to pay any judgment rendered nor is any contention made in the ground that the plaintiff was not damaged within the measure charged by the court.

The exceptions to the rulings of the trial court on the special demurrers were not argued in the defendants' brief and thus are deemed abandoned.

*Judgment affirmed as to the defendant Norman S. Wrigley, Jr. The judgment denying the motion for judgment notwithstanding the verdict of the defendant Jack S. Cox is reversed with direction that a judgment n.o.v. be entered in his favor. Jordan and Eberhardt, JJ., concur.*