**AETNA CASUALTY AND SURETY COMPANY, Plaintiff,**

v.

**Dewayne Lee CRAIG, Defendant.**

**No. 60866.**

Supreme Court of Oklahoma.

March 21, 1989.

---

Huckaby, Fleming, Frailey & Chaffin by Scott M. Rhodes, Oklahoma City, for plaintiff.

Berry & Berry, P.C. by Howard K. Berry, Jr., Oklahoma City, for defendant.

SIMMS, Justice:

The United States District Court for the Western District of Oklahoma has certified the following questions of law pursuant to the Uniform Certification of Questions of Law Act, 20 O.S. 1981, § 1601, et seq.:

(1) May an injured person, a Class 1 insured, "stack" or aggregate the uninsured motorist coverage on a fleet of commercial vehicles covered by a single insurance policy?

(2) Whether the payment of punitive damages under uninsured motorist insurance coverage would contravene the public policy of the State of Oklahoma?

That Court has provided the following summary of facts relating to the questions presented, which we reproduce here for clarity.

"Defendant Dewayne Lee Craig was an employee of Multi–Media Corporation. While riding in a vehicle owned by the Corporation, Craig suffered personal injuries when the vehicle in which he was riding was struck by an uninsured motorist, Peter Walley. The vehicle in which Craig was a passenger was owned by Multi–Media and was being driven by another Multi–Media employee.

"The defendant filed suit in the District Court of Oklahoma County against Walley. Judgment was entered on a jury verdict in favor of Craig. The court awarded Craig $5,000,000.00 in actual damages and $5,000,000.00 as punitive damages.

"In this case, Aetna Casualty is seeking a declaration that it is not liable to Craig for the damages under the uninsured motorist provisions of a policy it issued to Craig's employer, Multi–Media. The policy in question was a single policy of insurance providing coverage for Multi–Media's fleet of company vehicles. Multi–Media was charged a [separate] premium for each vehicle.

"The [United States District Court] has determined that Craig was an insured under subsection 1 of the policy which defined the covered insureds as:

(1) You (referring to the named insured) or any family member.

The policy contained a clause limiting liability, which provided:

E. Our Limit of Liability.

Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of Uninsured Motorist Insurance shown on the declarations.

"Both parties filed Motions for Summary Judgment, plaintiff, the insurer, arguing that stacking of uninsured motorist coverage in a commercial fleet policy is not permitted and that public policy precludes coverage for punitive damages under an uninsured motorist endorsement. Defendant, as an insured, asserts he is entitled to stack the uninsured motorist insurance coverages and to recover punitive damages."

## I.

Our answers to these questions follow stare decisis. In the case of *Babcock v. Adkins*, Okl., 695 P.2d 1340 (1984), we held that only persons who qualified as "insureds" under a series of policies may stack the uninsured motorist coverage provided by those policies. We stated that "those qualifying as insured by reason of status as passengers or permissive users do not qualify as insureds beyond the policy covering the vehicle in which they are located when injured by an uninsured motorist." 695 P.2d at 1343.

Later, in *Rogers v. Goad*, Okl., 739 P.2d 519 (1987), we were presented with the question of who qualified as an insured under a single, commercial fleet insurance policy which provides coverage for a number of vehicles. There, we further defined the distinction between Class 1 and Class 2 insureds in deciding whether stacking is available to an employee/insured. That case presented a situation factually similar to that now facing the United States District Court in this case.

We note that the first question certified to us *assumes* the employee to have been a Class 1 insured. The correctness of the conclusion so reached by the federal court from the facts in this case has not been tendered either for our legal analysis or some responsive comment. It is plainly not subject to this Court's appellate review.

In deciding that an employee was a Class 2 insured, and thus not permitted to stack coverage for all vehicles covered in a fleet insurance policy, this Court cited with approval the rationale used by the Virginia Supreme Court in *Cunningham v. Insurance Company of North America*, 213 Va. 72, 189 S.E.2d 832 (1972). Paraphrasing the *Cunningham* Court, we remain committed to the the practice that courts cannot substitute the name of each of the many employees of a given company in place of the employer as the named insured and thus stretch the coverage of the policy to include each employee and all of the members of his household. To do so would rewrite the contract of the parties and distort the public policy as set out in our cases. See *Cunningham*, supra, 189 S.E.2d at 835.

As summarized in *Rogers:* "granting the same benefits to both the Class 1 insured and the Class 2 insured would place upon the insurer a risk not contemplated by the contracting parties." *Rogers v. Goad*, 739 P.2d at 522. In *Rogers*, we stated that the employee was a Class 2 insured and as such, was only entitled to the coverage provided by the specific vehicle he was occupying when he was injured. The rule that employees, as Class 2 insureds, are only entitled to the single vehicle coverage stated above was even more recently reaffirmed by our holding in *Stanton v. American Mutual Liability Insurance Co.*, Okl., 747 P.2d 945 (1987). While not specifically stated in these cases, the clear answer to the first question certified must therefore be that ONLY Class 1 insureds may stack the uninsured motorist protection in a commercial fleet insurance policy.

Accordingly, we answer the first certified question in the AFFIRMATIVE.

## II.

With respect to the second question certified, we rely on a previous decision by this Court on the related issue of whether an insurer can be held liable for punitive damages imposed against an insured. In *Dayton Hudson Corporation v. American Mutual Liability Insurance Company*, Okl., 621 P.2d 1155 (1980), our opinion closely examined the public policy considerations involved in requiring insurers to pay punitive damage awards.

In *Dayton*, this Court emphasized the primary purpose of punitive damages: "punishment of the offender and the deterrence of others, for the benefit of society, from the commission of like wrongs." 621 P.2d at 1158. Discussing the issue from a liability insurance standpoint, we recognized that the public policy concerns in support of awards of punitive damages, namely deterrence and punishment, require that the ultimate burden of such awards rest directly on the wrongdoer. By allowing one to insure against such awards, the

burden is shifted from the wrongdoer to the otherwise innocent insurer. Ultimately, of course, the burden is then passed to the consuming public in the form of higher insurance rates, generally. The public policy in support of punitive damages is thwarted by such a practice.

The injustice to the public policy underpinnings of punitive damages would be increased even more if we were to sanction the position advocated here. In this case, the result advocated is to force the innocent insurer of an equally blameless insured to bear the burden of a wrong committed by a third person: a person who is unrelated in any way to the contracting parties. This rewards and protects the wrongdoer, rather than punishes and deters. As stated in an early case in the Fifth Circuit: "Where a person is able to insure himself against punishment, he gains a freedom of misconduct [which is] inconsistent with the establishment of sanctions against such misconduct." *Northwestern National Casualty Company v. McNulty*, 307 F.2d 432, 440 (5th Cir.1962). The suggestion that the innocent insurance company, through subrogation, can later recover the punitive damage assessment from the wrongdoer in this case is a rationalization that borders on the nonsensical. Quite obviously, if such a recovery were possible, this case would never have arisen.

In holding that it was against the public policy of the State of Oklahoma to allow a tortfeasor to escape the civil consequences of his wrong through insurance, we recognized one narrow exception to that rule, where the insured employer may be held vicariously liable for the tortious behavior of his employee. Under that limited exception, the employer's liability is imputable through operation of the doctrine of respondeat superior. *Dayton Hudson Corporation v. American Mutual Liability Insurance Company*, supra, at 1160.

*Dayton* is factually distinguishable from the instant case. There, the Court was faced with a tortious employee of an insured whose tortious acts were unauthorized by the employer. There is no public policy violated when an innocent master is protected by insurance from punitive damage liability arising out of the tortious, unauthorized, acts of a servant. In that factual framework, the blameless insured bears some limited responsibility for failure to take precautions against his employees' tortious behavior by assuming the ultimate burden of the punitive damages through later increased premiums. He is encouraged to take greater care in the supervision of other employees to prevent other forms of employee misconduct. The insured is receiving the benefit of his bargain for liability insurance. By obtaining liability coverage, the blameless employer is protecting himself from the wrongful acts of his employees which, by virtue of the employment relationship alone, are imputed to the insured. Consistent with our cases, however, when the insured/employer is party to, or acquiesces in, the wrongful acts, liability insurance will not protect against awards of punitive damages assessed because of his, the insured's, "positive wrongdoing". 621 P.2d at 1161. Stated yet another way, and in the context of the questions presented, it is the status analogous to that as a Class II insured, i.e. as an employee, which provides liability potential to the employer which the liability insurance is designed to protect against. It is the combination of the status as an employee as an insured and as a source of potential liability to a blameless employer which permits the viacarious libility exception to the strong public policy concerns examined here.

The dissents place great reliance on the statement by Craig that there exists a "South Carolina form" rider to the liability insurance policy which specifically abrogates the provisions of the policy which exclude coverage for punitive damages. We do not find this rider in the record. Assuming, however, that the rider is part of the policy in question, it is of no legal effect in Oklahoma. The strong public policy of this state, as previously discussed at length, is against such insurance arrangements. See: *Dayton Hudson Corporation v. American Mutual Liability Insurance Company*, supra. Unlike Oklahoma, South Carolina, by statute, allows for in-

surance protection against direct awards of punitive damages. See e.g.: S.C.Laws (1976) §§ 56-9-810 and 56-9-830;[1] *State Farm Mutual Automobile Insurance Company v. Hamilton*, 326 F.Supp. 931 (D.S.C.1971). Quite obviously, any contract written in conformity with the statutes of another state whose laws directly conflict with Oklahoma's strong public policy would be of absolutely no relevance in deciding a question presented of pure Oklahoma law.

The dissent by Justice Wilson is misguided in that even the most cursory reading of our cases, makes it clear that employees of an insured are Class II insureds as a result of their status as *employees*, not as "permissive users" as the dissent suggests. Secondly, even if we could accept the dissent's "incorporeal entity" theory, we must be mindful that it is not the bodies, i.e., corporeal entities, of the corporate employees which are the corporation, but rather its shareholders. To accept the dissent's view of incorporeal corporate existence is to conclude, logically, that the corporation's *shareholders* are Class I. It is they, through stock purchase and corporate income, who pay the insurance premiums, *not* the corporation's employees.

Nor is liability insurance, per se, an issue in this case. The focus of the second certified question is the degree of recovery afforded by Uninsured motorist coverage and which is consistent with the public policy of this state. We are presented with a blameless injured employee of an equally blameless insured combined with an admittedly blameless insurer. The employee was grievously injured by a third person: an uninsured tortfeasor. In this situation, neither public interest of punishment or deterrence would be served by requiring the insurer to assume the responsibility of paying a punitive damage award assessed against the third person/tortfeasor. Nor is it relevant to our decision that the insured and the insurer made provisions to protect against similar punitive damage awards in other jurisdictions by attaching a rider to the policy providing for such protection. It should seem elementary that any contractual provision that is against Oklahoma public policy would be void and unenforceable in Oklahoma, regardless of its degree of acceptance in other states.

We therefore hold that payment of punitive damages under uninsured motorist insurance coverage contravenes the public policy of the State of Oklahoma.

**CERTIFIED QUESTIONS ANSWERED.**

HARGRAVE, C.J., and LAVENDER and DOOLIN, JJ., concur.

KAUGER, J., concurs specially in part I, dissents to part II.

OPALA, V.C.J., concurs in part I, dissents in part II.

HODGES, J., dissents in part I, concurs in part II.

SUMMERS, J., concurs in part, dissents in part.

ALMA WILSON, J., dissents.

SUMMERS, Justice, concurring in part and dissenting in part.

I concur in substance with the court's response to the first certified question and in its general language in response to the second. I write in partial dissent only out of concern that perhaps our answer to question number two does not fully deal with the facts of the case. Although the second certified question does not include the fact that the policy in question by its terms expressly insured against punitive

---

**1.** The applicable provisions of South Carolina's statutes are found in Article 7 of that state's Financial Responsibility Act, as follows:

"§ 56-9-810., Definitions. As used in his article:....

"(4) The term 'damages' shall include both actual and punitive damages.

"§ 56-9-830. Uninsured motorist provision generally; determination of premium rates; defense of action by insurer.

No such policy or contract shall be issued or delivered unless it contains a provision by endorsement or otherwise, herein referred to as the uninsured motorist provision, undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, ..."

damages, such appears to be the case. The policy included the usual uninsured motorists endorsement specifically excluding punitive damages, but then endorsement CC–5393 was added providing that the *exclusion* of coverage for punitive damages should *not* apply. Aetna admits this to be so.

In *Dayton Hudson Corp. v. American Mutual*, 621 P.2d 1155 (Okl.1980) we recognized an exception to the general public policy against allowing insurance to cover punitive damages. That exception takes effect where the insured is a blameless employer held vicariously liable for the torts of his employee. Here the insured employer Multi Media Inc. was equally blameless—the uninsured motorist Walley was the tortfeasor against whom the verdict for punitive damages was returned. But in addition Multi Media Inc. had bought and (presumably) paid for a policy of uninsured motorist insurance which by its terms covered punitive damages.

Where, as in this case, Aetna issued such a policy, charging for and presumably collecting the premium for such coverage, and where, as here, the insured is factually blameless, my notions of propriety would not be offended by considering Aetna to be estopped from raising the public policy defense.

This approach would not let driver/defendant Walley avoid the consequences of his wrongdoing should Aetna pursue as normal its rights of subrogation—the ultimate liability for punitive damages would fall back on the tortfeasor as public policy dictates. See *Lipscombe v. Security Ins. Co. of Hartford*, 213 Va. 81, 189 S.E.2d 320 (1972).

I am authorized to state that V.C.J. OPALA joins in these views.

KAUGER, Justice concurring specially in part I, dissenting in part II and joining SUMMERS, J., insofar as punitive damages are concerned.

I concur that an injured person, a Class 1 insured, may stack uninsured motorist coverage on a fleet of commercial vehicles covered by a single insurance policy. The certifying court has determined that the employee was a Class 1 insured—that question has not been proffered for review.

ALMA WILSON, Justice, dissenting:

The question whether Craig is a "Class One" as opposed to a "Class Two" insured is not before this Court. The majority errs by inferentially deciding this issue. *See, paragraph four of Part I of the majority opinion.* The federal court has already determined as a matter of fact that Craig is an insured under both "Class One" and "Class Two" of the policy. The Order of Certification of Question, at page two, states specifically:

"... It was a single policy that provided coverage for 268 vehicles and Multi–Media was charged a premium for each vehicle. *Defendant Craig is an "insured" under both subsections 1 and 2 of the uninsured motorist insurance endorsement* attached to the policy, which defines as insured:

1. You (referring to the named insured) or any family member.

2. Anyone else occupying a covered auto or a temporary substitute for a covered auto."

*[Emphasis added.]*

I am of the opinion that the federal court's conclusion as to Craig's classification is correct and I disagree with the majority opinion's conclusion that determination of the federal court's certified question is simply a matter of stare decisis. The federal court acknowledged the absence of a definitive case, in point, with the facts of the present controversy by so stating and by tendering the question to us. *Babcock v. Adkins*, 695 P.2d 1340 (Okla.1984); *Rogers v. Goad*, 739 P.2d 519 (Okla.1987); and *Stanton v. Mutual Liability Insurance Co.*, 747 P.2d 945 (Okla.1987), the cases cited in the majority opinion as dispositve by reason of stare decisis, did not involve an *employee/agent* insured during the *scope and course of employment* for a *corporate named insured.* Moreover, citations within our previous cases, *supra,* do not represent precedential "commitments" beyond their application to the

facts which were before this Court at the time those cases were decided. To be thus bound, is to be governed by obiter dictim, and is to ignore the factual integrity of each and every case presented to this Court for its own merit.

The case of *Babcock v. Adkins, supra,* stands for the proposition that true permissive users may not stack, i.e., persons who are entitled to uninsured motorist coverage *only because of their status as occupants,* i.e., "permissive users". In the present case, Craig's status is not that of a mere occupant or permissive user in the vehicle of an unrelated named insured, therefore, *Babcock* is not dispositive.

Additionally, in the Case of *Rogers v. Goad, supra,* (wherein I concurred), nowhere is it stated therein that the coverage was triggered as a consequence of the agency status of the employee. To the contrary, the issue in *Rogers* was characterized as whether a *"permissive-user"* employee may stack uninsured motorist coverage under his employer's automobile fleet insurance policy. A permissive user is one who is entitled to uninsured motorist coverage *only* because of one's status as an occupant. *See, Babcock, supra.* In the present case, occupancy alone does not constitute the gravamen of the factual scenario. Here, Dewayne Craig is not simply a permissive user by reason of occupancy without further relationship to the named insured. At the time in question, this person was acting in the capacity of an agent for the *sole* benefit of the corporate named insured. Craig's insurability thus arises not only because of occupancy in a covered vehicle, but because of his *relationship* to the corporate named insured. "Relationship to Named Insured" *vis-a-vis* "Occupancy in Covered Vehicle" more accurately embrace the so-called "Class One/Class Two" distinction. Accordingly, the federal court here correctly assessed Craig's status to encompass both categories. In this respect, even were the federal court's factual determination incorrect, the *Uniform Certification of Questions of Law Act,* 20 O.S. 1981 § 1601 *et seq.,* is the sole basis for the presentation of questions of law to this Court by a federal court and that Act does not authorize this Court to reverse a federal court's factual determination in its answer to certified questions of law. Part I, paragraph four, of the majority opinion does so by reference to dictim in a case distinguishable upon its own facts. If one or more of the parties wishes to challenge the federal court's factual determination, the appropriate place to do so is in the federal tenth circuit, not in state court.

Finally, in the case of *Stanton v. American Mutual Liability Insurance Company, supra,* this Court with respect to a *"permissive user"* noted that:

"At the time of the accident, Stanton was *not* acting in the course of his employment, but he was authorized to use the vehicle for his *personal use* as part of his compensation with Fuller." [*Emphasis added.*]

Our underlying rationale in *Stanton* was *Rogers v. Goad,* "because *Rogers* presented the most analogous situation to the matter [then] before us." *Stanton,* at 946. However, the situation manifest in both *Stanton* and *Rogers* is factually distinguishable to the present corporate agency situation. Therefore, those cases do not here provide clear precedent. My rationale for the distinction is two-fold:

*First,* the "named insured" is an incorporeal (without physical body) entity, a principal which can only act through its agents. *East Central Oklahoma Electric Coop. v. Oklahoma Gas and Electric Co.,* 505 P.2d 1324 (Okla.1973). A corporation is nothing more than a robot, created by the law, possessing only that sensibility which its management and agents bring to it. *Wrigley v. Nottingham,* 111 Ga.App. 404, 141 S.E.2d 859 (1965); and, expressed still another way, a corporation is an *artificial* legal person *invisible* and *intangible,* and can *only* act through its officers and agents. *Aimonetto v. Rapid Gas, Inc.,* 80 S.D. 453, 126 N.W.2d 116 (1964). A corporation is no more than an abstraction, and an abstraction cannot be insured against physical bodily injury. Thus, when the policy's uninsured motorist [UM] *bodily* injury provisions are triggered as a consequence of the status of an agent acting at the

behest of Multi–Media, such agent constructively constitutes the abstract principal, Multi–Media, the named insured. For all practical purposes, the agent here is not merely "Dewayne Craig—an Independent Occupant", but is, "Multi–Media—the Named Insured", for Multi–Media cannot act except through him and other agents. *East Central, supra.* An agent may or may not be a shareholder of the corporation at any particular time; but shareholders cannot remain corporate agents at all times, for it is the action taken and not individual identity which is determinative. Thus, the focus of insurability is not the mere fact of employment; but rather insurability in this context rests upon the principal/agent relationship whereby the agent's actions are in law those of the principal named insured. Otherwise, the "Class One" designation is an illusory UM classification, for there is no physical body to insure against personal injury by an uninsured motorist. Though an incorporeal entity may own property (i.e., vehicles), it has no physical human body, except that of its agents. I am therefore of the opinion that for the purpose of UM bodily injury coverage, the "named insured" designation here refers to those acting in the course and scope of the corporation's authority—the agents, whether they at any one time be employees, officers or specially designated agents, depending upon the agency question presented under the facts of each case. This is the natural and logical consequence of the settled premise that any attempt to tie uninsured motorist coverage to vehicles alone, and not to *people,* must fail. *State Farm Mut. Auto. Ins. Co. v. Wendt,* 708 P.2d 581 (Okla.1985); *also see, Cothren v. Emcasco Insurance Company,* 555 P.2d 1037 (Okla.1976).

*Secondly,* 268 separate insurance premiums have been collected for uninsured motorist coverage. Where separate premiums are collected by an insurance company for the provision of uninsured motorist coverage, the insured is entitled to recover upon each separate coverage purchased. *Keel v. MFA Ins. Co.,* 553 P.2d 153 (Okla.1976); *Richardson v. Allstate Ins. Co.,* 619 P.2d 594 (Okla.1980). In withholding from an insured that for which a premium has been collected, the insurer reaps an unjust enrichment.

Similarly, as part of its policy of insurance, Aetna collected a premium for punitive damages coverage, whereby it voluntarily contracted to assume the risk of a punitive damages recovery. I do not view this contract as coming within the auspices of any established public policy exception and denial of the very punitive damages coverage contracted for is tantamount to an additional unjust enrichment.

I dissent.