PER CURIAM
[¶ 1.] The Institute of Range and the American Mustang (IRAM) appeals from a summary judgment dismissing its suit against The Nature Conservancy. IRAM sought to void a seventeen-year-old deed of conservation easement and to quiet title to its property.[1] IRAM claimed: (1) The Nature Conservancy obtained the deed by fraud; (2) IRAM's president entered into the transaction without corporate authority; and (3) there was a failure of consideration and no meeting of the minds concerning the terms of the easement giving The Nature Conservancy a property interest. We affirm.
Facts and Procedural History
[¶ 2.] In 1988, Dayton Hyde moved to the Black Hills to create a wild horse sanctuary. He formed IRAM as a South Dakota non-profit corporation to acquire land and preserve a habitat for horses. IRAM's original board of directors included: Hyde, Richard Blue, and attorney Robert Friese. Later board members included: Susan Watt and Randy Wright. Hyde has been the president of IRAM since its creation and was in charge of its day-to-day operations.
[¶ 3.] The Nature Conservancy is a charitable non-profit corporation authorized to do business in South Dakota with a stated mission to conserve the lands and waters upon which all life depends. The Nature Conservancy pursues its mission by obtaining conservation easements on private property.[2] Landowners often donate the easements; however, easements are also purchased from landowners.
[¶ 4.] In 1998, Robert Paulson from The Nature Conservancy's Wyoming office contacted IRAM about obtaining a conservation easement on IRAM's property. Paulson, acting on behalf of The Nature Conservancy, first discussed the terms of the easement with Hyde "over the back of a pickup truck." Paulson claimed he also met with IRAM's board regarding the easement. More specifically, he testified that in the fall of 1998, he met with Hyde and board members Blue and Watt in *4 Washington to discuss the easement. Blue confirmed he had reviewed a draft of the easement in 1998 when visiting IRAM's property in South Dakota.
[¶ 5.] To facilitate the transaction, Hyde and Paulson executed an option to purchase the conservation easement. Pursuant to the option, IRAM granted The Nature Conservancy the right and option to acquire a conservation easement over IRAM's real property. The option indicated "[t]he total purchase price for the Conservation Easement, including the Option Consideration, (the 'Purchase Price'), shall be Two Hundred Thirty Thousand Dollars ($230,000)." The option required the deed of conservation easement to be substantially similar to the one that was attached as Exhibit B. It also required the easement include provisions "in Section 5 below." Section 5 required that within twenty days after the parties approved an easement documentation report, The Nature Conservancy and IRAM would approve "a final form of a Deed of Conservation Easement," which again was to be substantially similar to Exhibit B.
[¶ 6.] Exhibit B contained a section titled, "Subsequent Sale, Exchange or Involuntary Conversion," which provided in relevant part that IRAM and The Nature Conservancy "agree that granting of this Easement immediately vests" The Nature Conservancy "with a property right[.]" The "full market value of this property right" was described in part as "50% of the full market value of the Property." The final deed similarly gave The Nature Conservancy an interest in IRAM's property and described the fair market value of the property right in part as: "50% of the fair market value of the Property."[3] Hyde signed the option on behalf of IRAM; and Paulson signed on behalf of The Nature Conservancy. The option recited that both parties were authorized to enter into the transaction.
[¶ 7.] The parties subsequently amended the option two times. The first amendment changed a provision relating to the easement documentation report and the date upon which The Nature Conservancy and IRAM would approve the final deed. Additionally, and consistent with the original option, the first amendment provided that the deed of conservation easement would "be substantially in the form" as Exhibit B and would be consistent with changes IRAM and The Nature Conservancy would agree upon based on the easement documentation report. The second amendment again changed the date the parties were to approve the final deed. Like the prior documents, the second amendment required that the deed "be substantially in the form attached" as Exhibit B.
[¶ 8.] On October 18, 1998, Hyde signed a document acknowledging and accepting the easement documentation report. Bruce Pierce, as vice president of The Nature Conservancy, signed the same document on November 18, 1998. Closing on the deed of conservation easement occurred on December 3, 1998 at Fall River Title Company.
[¶ 9.] Paulson testified that prior to closing, Patrick Ramos of The Nature Conservancy signed a document accepting the deed on December 2 and had the deed delivered to Fall River Title Company for escrow until the December 3 closing. Shelly Swanson from the title company testified *5 in her deposition that Hyde was present at the closing on December 3. She further testified she had witnessed and notarized Hyde's signature on the deed. The Nature Conservancy delivered $230,000 to IRAM at closing, and The Nature Conservancy recorded the deed with the Fall River County Register of Deeds.
[¶ 10.] Approximately eighteen years later, in May 2016, IRAM commenced this action to have the deed declared null and void. It first argued The Nature Conservancy fraudulently procured the easement. Second, it argued Hyde acted ultra vires in granting the easement. IRAM claimed Paulson never presented the deed to the board for approval, and the board was unaware the easement gave The Nature Conservancy a property interest in IRAM's property. Finally, IRAM argued there was a failure of consideration and no meeting of the minds on the property interest provision.
[¶ 11.] Both sides moved for summary judgment based on statements of undisputed facts. The Nature Conservancy argued the statute of limitations had expired on IRAM's fraud claim. It further argued the undisputed facts established a meeting of the minds and consideration to support the deed. IRAM argued the deed was void on its face based on two discrepancies. It pointed out that the deed indicated Hyde had signed it on December 2, 1998, but the notary signature was dated December 3. It further pointed out its seal was not affixed to the deed, but the notary page represented that "the seal affixed is the corporate seal of said corporation."
[¶ 12.] The circuit court granted The Nature Conservancy summary judgment on each of IRAM's claims and denied IRAM summary judgment. First, it concluded the six-year statute of limitations had expired on IRAM's fraud claim. The court also found no issue of material fact in dispute on IRAM's claims of no meeting of the minds and failure of consideration. It did so because there was no dispute IRAM received $230,000 for the easement. The court concluded the undisputed material facts established Hyde acted with corporate authority because IRAM subsequently ratified all of Hyde's acts by corporate resolution. IRAM appeals.[4]
Decision
Statute of limitations on IRAM's fraud claim
[¶ 13.] IRAM argues a jury must determine whether the six-year statute of limitations expired on its fraud claim.[5] It points out that a fraud claim "shall not be deemed to have accrued until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting fraud." Strassburg v. Citizens State Bank , 1998 S.D. 72, ¶ 12, 581 N.W.2d 510, 515 (quoting SDCL 15-2-3). It contends it did not receive notice of the terms of the easement until 2013, when an employee from The Nature Conservancy informed IRAM that The Nature Conservancy owned half of IRAM's property. It further contends a material issue of fact is in dispute on the questions of discovery and notice because Hyde testified that the deed he discovered in 2013 contained different terms than the deed he had signed *6 in 1998; IRAM board member Blue testified that the easement he had reviewed in 1998 did not contain a property interest provision; and concerns existed regarding the validity of Hyde's notarized signature.
[¶ 14.] Actual notice and constructive notice are defined by statute. "Actual notice consists in express information of a fact." SDCL 17-1-2. "Constructive notice is notice imputed by the law to a person not having actual notice." SDCL 17-1-3. Constructive notice is also deemed to exist for "[e]very person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence[.]" SDCL 17-1-4.
[¶ 15.] In this case, the undisputed material facts establish that at the time IRAM signed and delivered the deed to The Nature Conservancy, it had actual notice of circumstances sufficient to put it on inquiry as to the particular nature of the easement terms. Prior to signing the deed, Hyde and Paulson entered into and executed an option agreement specifically for The Nature Conservancy's acquisition of the easement from IRAM. The option agreement and both of its amendments incorporated a draft of the intended easement and required IRAM to grant to The Nature Conservancy an easement "pursuant to the terms, covenants and conditions of a deed ... substantially in the form of Exhibit B [.]" Exhibit B contained a clear and unambiguous provision "vest[ing]" in The Nature Conservancy a "property right" in IRAM's property.
[¶ 16.] Although IRAM now claims the property interest provision was not part of the transaction and was inexplicably inserted in the deed signed on December 3, 1998, IRAM does not dispute that Hyde signed the option agreement incorporating a draft deed with the property interest provision or that Hyde was present at the closing on the deed. We conclude IRAM's active participation in this procedural history and Hyde's execution of the deed imparted sufficient actual knowledge of the circumstances to place a duty upon it to further inquire concerning the terms of the deed. Therefore, IRAM is deemed to have constructive knowledge of the property interest provision. See SDCL 17-1-4.
[¶ 17.] The statute of limitations on a claim of fraud begins to run when a party "first become[s] aware of facts prompting a reasonably prudent person to seek information about the problem and its cause." Strassburg , 1998 S.D. 72, ¶ 13, 581 N.W.2d at 515. The failure to examine or read the deed that Hyde executed is not the action of a reasonable prudent person. Because IRAM has not established the existence of material facts negating constructive knowledge of the terms of the deed under SDCL 17-1-4, we conclude IRAM's fraud claim accrued more than six years prior to its suit.
[¶ 18.] However, IRAM also asserts fraud based on a discrepancy between the date Hyde's signature was notarized and the date Hyde signed the deed. But the record does not suggest that the discrepancy is evidence of fraud. IRAM does not dispute Hyde in fact signed the deed at the December 3 closing. IRAM simply refers to Hyde's deposition testimony that he could not remember. Further, although the notary page erroneously indicated IRAM's corporate seal was affixed to the document, the absence of the seal does not void the conveyance. See SDCL 43-25-25. Nor does the notary's error create an issue of material fact regarding fraud, constructive notice, or IRAM's duty to make inquiry as to the terms of the 1998 deed.
[¶ 19.] Because the statute of limitations expired more than six years prior to IRAM's suit, the circuit court did not err *7 in granting The Nature Conservancy summary judgment on IRAM's fraud claim.
Summary judgment on IRAM's ultra vires claim
[¶ 20.] IRAM argues Hyde acted without corporate authority in signing the deed in 1998 because its bylaws did not empower individual board members (including its president) to act. IRAM acknowledges it adopted a resolution in 2013 ratifying the prior conduct of its officers and directors. However, it contends there is a material dispute of fact whether it ratified Hyde's act of executing the deed. IRAM points out that the 2013 resolution makes no mention of the conservation easement, and the record fails to establish IRAM's board was aware of which specific acts it was ratifying when it executed the 2013 resolution.
[¶ 21.] In response, The Nature Conservancy argues IRAM knew when it executed the 2013 resolution that Hyde had executed a deed of conservation easement in 1998. It also points out that board member Blue testified he had reviewed a draft of the easement knowing Hyde intended to execute the deed. Further, in 2010, IRAM submitted an affidavit to the Nuclear Regulatory Commission and a letter to the editor expressly referring to the existence of a conservation easement on the property. In The Nature Conservancy's view, this evidence shows IRAM understood in 2013 it had given an easement; therefore, IRAM's resolution was intended to ratify Hyde's act as president in granting of the conservation easement. We agree.
[¶ 22.] The text of the 2013 resolution broadly ratifies the previous acts of IRAM's officers; and it does so without qualification.
4. That the current officers of the corporation are Dayton O. Hyde, President, Susan Watt, Vice President, Robert C. Friese, Secretary, Richard Blue, Treasurer. That the parties do hereby agree that all past persons serving as officers of the corporation conducted the affairs of the corporation in the manner that the directors approve.
(Emphasis added.) This language clearly ratified Hyde's execution and delivery of the deed.
[¶ 23.] Additionally, even if IRAM had failed to affirmatively provide authority, "[i]n the absence of evidence to the contrary, it is presumed that the president of a corporation active in its management has authority to do and perform acts necessary to the conduct of the business...." See Aimonetto v. Rapid Gas, Inc. , 80 S.D. 453, 458, 126 N.W.2d 116, 119 (S.D. 1964). Here, there is no evidence Hyde lacked corporate authority when he signed the option to purchase, the amendments to that option, and the deed of conservation easement. IRAM's unsupported claim that its ratification was not made knowingly does not change that conclusion. " SDCL 15-6-56(e) requires the opposing party to be diligent in resisting a motion for summary judgment, and mere general allegations and denials which do not set forth specific facts will not prevent the issuance of a judgment." Bordeaux v. Shannon Cty. Sch. , 2005 S.D. 117, ¶ 14, 707 N.W.2d 123, 127 (quoting Hughes-Johnson Co. v. Dakota Midland Hosp. , 86 S.D. 361, 364, 195 N.W.2d 519, 521 (1972) ); accord Foster-Naser v. Aurora Cty. , 2016 S.D. 6, ¶ 11, 874 N.W.2d 505, 508. IRAM did not meet that standard here. It merely alleged board members testified they were not aware of which acts they were ratifying, and one board member testified he did not "pay enough attention" to the ratification provision in the 2013 resolution. Because the 2013 resolution ratified Hyde's execution of the deed on behalf of IRAM, the circuit court did not err in granting The Nature Conservancy summary judgment on IRAM's ultra vires claim.
*8 Summary judgment on claim to vacate deed for no meeting of the minds
[¶ 24.] On this issue, IRAM simply repeats its prior argument. It contends there could be no meeting of the minds to include the property interest provision in the easement because Hyde did not have the authority to bind IRAM without board authorization. However, we have just concluded that IRAM ratified Hyde's execution and delivery of the deed. Additionally, absent some limitation on corporate governance, the president of the corporation has such authority. See, e.g. , Aimonetto , 80 S.D. at 458, 126 N.W.2d at 119. Therefore, IRAM has not established that Hyde had no had authority to bind IRAM in executing the deed.
[¶ 25.] IRAM further argues the parties did not have a meeting of the minds because there is no evidence it agreed to the property interest provision. We acknowledge that "[a]n enforceable contract requires mutuality of consent." Coffee Cup Fuel Stops & Convenience Stores, Inc. v. Donnelly , 1999 S.D. 46, ¶ 22, 592 N.W.2d 924, 927. Consent is mutual when "the parties all agree upon the same thing in the same sense." SDCL 53-3-3. But "[a]s a general principle, one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party." LPN Trust v. Farrar Outdoor Adv., Inc. , 1996 S.D. 97, ¶ 13, 552 N.W.2d 796, 799 (quoting Flynn v. Lockhart , 526 N.W.2d 743, 746 (S.D. 1995) ).
[¶ 26.] Here, IRAM did assert fraud, but Hyde does not dispute he intended to execute the deed in 1998 or that he signed the deed in 1998 on behalf of IRAM. He merely claims that he was unaware the deed granted The Nature Conservancy a property interest in IRAM's property. Under these circumstances, Hyde's failure to determine the content of the deed he was signing must be described as negligence. Further, Hyde's negligence should not foreclose The Nature Conservancy's right to rely on Hyde's affirmative manifestation of mutual agreement and assent to be bound by the terms of the 1998 deed. "To permit a party, when sued on a written contract, to admit that he signed it but deny that it expresses the agreement he made or to allow him to admit he signed it but did not read it or its stipulations would destroy the value of all contracts." Scotland Vet Supply v. ABA Recovery Serv., Inc. , 1998 S.D. 103, ¶ 9, 583 N.W.2d 834, 836 (quoting LPN Trust , 1996 SD 97, ¶¶ 13-15, 552 N.W.2d at 799-800 ). Moreover, because the parties' option to purchase contained the property interest provision, Hyde's claimed lack of knowledge arose "from want of such care as would be exercised by a person of reasonable prudence where the means of knowledge were readily accessible." See In re Ricard Family Trust , 2016 S.D. 64, ¶ 20, 886 N.W.2d 326, 331 (quoting Olson v. Opp , 85 S.D. 325, 329, 182 N.W.2d 220, 222 (1970) ). The circuit court did not err in granting summary judgment on this claim.
Summary judgment on the claim to vacate the deed for failure of consideration
[¶ 27.] IRAM argues the circuit court erred in granting The Nature Conservancy summary judgment on IRAM's claim that the contract is void for a lack of consideration. Hyde testified in his deposition that he believed the $230,000 transfer made by The Nature Conservancy was a donation rather than payment for the easement. IRAM contends the question whether the $230,000 given to IRAM by The Nature Conservancy was consideration is a question of fact for the jury to determine.
*9 [¶ 28.] We agree this question is most often one for the jury. But "when challenging a summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." Peters v. Great W. Bank, Inc. , 2015 S.D. 4, ¶ 13, 859 N.W.2d 618, 624 (quoting Estate of Elliott v. A & B Welding Supply Co. , 1999 S.D. 57, ¶ 16, 594 N.W.2d 707, 710 ). "Entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." One Star v. Sisters of St. Francis, Denver, Colo. , 2008 S.D. 55, ¶ 9, 752 N.W.2d 668, 674.
[¶ 29.] The record includes a buyer closing statement indicating The Nature Conservancy paid $230,000 at closing on December 3, 1998. Further, Hyde testified that IRAM's statement of activities for 1998 listed $230,000 as revenue for the conservation easement. Finally, the option to purchase indicated the $230,000 was "[t]he total purchase price for the Conservation Easement [and the] option[.]" From this evidence, The Nature Conservancy's summary judgment showing was sufficient to shift the burden to IRAM to support its donation allegation with sufficient probative evidence. But IRAM did not identify evidence disputing these facts or resist summary judgment with any evidence establishing a material issue of fact in dispute relating to a donation. Instead, it only presented Hyde's conclusory testimony that $230,000 was a donation. The circuit court did not err in granting The Nature Conservancy summary judgment on this claim.
[¶ 30.] Affirmed.
[¶ 31.] GILBERTSON, Chief Justice, and KERN, JENSEN, and SALTER, Justices, concur.

IRAM sought other equitable relief and damages. But all claims are based on the validity of a provision in the deed granting the conservation easement.

A conservation easement is defined under SDCL 1-19B-56(1) as a "nonpossessory interests of a holder in real property imposing limitations or affirmative obligations, the purposes of which include retaining or protecting natural or open space value of real property, assuring its availability for agriculture, forest, recreational, or open space use, protecting natural resources, maintaining or enhancing air or water quality, or preserving the historical, architectural, archeological, paleontological or cultural aspects of real property[.]"

IRAM contends the property interest provision in the final deed granted The Nature Conservancy a 50% interest in the property in addition to the easement. In contrast, The Nature Conservancy contends it "was not granted an unrestricted or unlimited property right in the acreage but, rather, monetizes this interest only in the event of a condemnation or extinguishment of the easement."

IRAM's appellate counsel did not represent IRAM in circuit court.

"When faced with 'a summary judgment motion where the defendant asserts the statute of limitations as a bar to the action and presumptively establishes the defense by showing the case was brought beyond the statutory period, the burden shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations[.]' " Cooper v. James , 2001 S.D. 59, ¶ 7, 627 N.W.2d 784, 787 (quoting Strassburg , 1998 S.D. 72, ¶ 5, 581 N.W.2d at 513 ).